In re SCHWARTZ & MEYERS, William Meyers, and Joseph J. Schwartz, Debtors.

Joseph HERBERT, Plaintiff,

v.

Joseph J. SCHWARTZ, et al., Defendants.

Robert M. GORDON, et al., Plaintiff,

v.

William MEYERS, et al., Defendants.

J. Frederic LOHMAN, Plaintiff,

v.

SCHWARTZ & MEYERS, et al., Defendants.

Harriet SMITH, Plaintiff,

v.

Joseph J. SCHWARTZ, Defendant.

Mary GOLDHAGEN, Ruth Pollack, and Beatrice J. Todes, Plaintiffs,

v.

SCHWARTZ & MEYERS, Defendant.

Bankruptcy No. 84 B 11306-8 (TLB). Adv. Nos. 85-6556A, 85-6562A, 85-6565A, 85-6819A and 85-6820A.

United States Bankruptcy Court, S.D. New York.

Sept. 16, 1986.

White & Case, New York City by Allan L. Gropper, James P. Laughlin, Aldo A. Badini, for Joseph J. Schwartz.

Stults & Marshall, New York City by Jon Yard Arnason, Melvin F. Greenberg, for William Meyers.

Crupain & Greenfield, New York City by Paul Greenfield, for Joseph Herbert.

Beck, Halberg & Williamson, New York City by Michael Horowitz, for Robert Gordon, et al.

Cohn & Blau, New York City by Valerie C. West, for J. Frederic Lohman.

Wachtell, Lipton, Rosen & Katz, Attorneys 299 Park Avenue New York City by Richard Weiss, for Harriet Smith.

Iris Altomare, *pro se* and Personal Representative for Mary Goldhagen, Ruth J. Pollack and Beatrice J. Todes.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The debtors seek an order dismissing the complaints filed by the plaintiffs on the

ground that they were not timely filed within the period set out in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. The central issue is whether creditors who were not notified of the deadline imposed by Rule 4007(c) are barred from objecting to the discharge of the obligations of the debtors to them. We hold that they are not.[1]

## I

Involuntary chapter 7 petitions were filed against two attorneys, Joseph J. Schwartz ("Schwartz") and William Meyers ("Meyers") and their law partnership, Schwartz & Meyers on September 20, 1984. The debtors are alleged to have solicited investments in real estate. Rather than oppose the petitions, the debtors, pursuant to § 706(a) converted the cases to chapter 11 of the Bankruptcy Code ("Code") and thereafter on April 3, 1985, these cases were reconverted to chapter 7 on the consent of the debtors.

Consequently, on April 9, 1985, the Clerk of the Court (hereinafter "Clerk's Office") sent notices to all creditors and other interested parties[2] advising that: 1) the cases had been converted to chapter 7; 2) the first meeting of creditors pursuant to Code section 341 was scheduled for May 3, 1985; 3) the last date for filing claims was August 5, 1985; and 4) the name and address of the appointed trustee in each of the particular cases. (hereinafter the "First Notice"). Significantly, the notice did not advise the creditors pursuant to Federal Rule of Bankruptcy Procedure 4007(c) that the last day for creditors to file complaints

to determine the dischargeability of their debts was July 2, 1985.

The day after expiration of the period, the Clerk's Office sent an Amended Notice to the above listed parties (the "Amended Notice"). It stated that the First Notice "inadvertently left out the last day to file objections to the discharge and a discharge hearing" and accordingly set September 3, 1985 as the deadline.

In response thereto, seven creditors sent communications expressing objections both to the debtors' discharge and dischargeability of particular debts. Tina L. Brozman, the bankruptcy judge assigned these cases[3] responded, by letters, to the creditor communications filed before September 3, 1985, the date she apparently perceived as the operative deadline. Her letters, which were in relevant part identical, stated that since their letter was "timely received prior to the last day to object to the debtors' discharge or to dischargeability of debts," she was construing their "communication[s] as a motion, which [she] grant[ed], to extend the last day ... to file a complaint objecting to discharge or dischargeability" and extended the date to November 22, 1985.

On the extended date, the Office of the United States Trustee applied for an order extending the time for Harriet Smith, a creditor, to file an objection to discharge or a dischargeability complaint. A hearing was held by Judge Brozman. Present were Smith, John Campo ("Campo") of the Office of the United States Trustee on Smith's behalf, the newly appointed *pro bono* attorneys for the debtors, and Christopher Chang ("Chang"), an attorney, on be-

---

1. Through the Bankruptcy *Pro Bono* Panel recently implemented in this district, the debtors and one creditor have been afforded very able counsel in these proceedings. The law firms of White & Case, Stults & Marshall, and Wachtell, Lipton, Rosen & Katz, all serving as *pro bono* counsel, have displayed legal representation of the highest quality as was evidenced at oral argument and by the briefs submitted to this court. These cases aptly demonstrate the need for a *pro bono* panel and we express our gratitude to counsel for their willingness to serve and the assistance rendered.

2. The notices were also sent to the debtors, taxing authorities and the United States Trustee. Although the Certificate of Mailing is dated April 9, 1985, the actual notice is date stamped April 10, 1985. The one day difference is of no moment here.

3. In her absence, the undersigned is entertaining the present motion.

half of an unidentified group of creditors seeking possible future representation.[4] Mr. Chang had not been formally retained.

In support of his application, Campo informed Judge Brozman that the Office of the United States Trustee was in the process of appointing *pro bono* counsel for Smith. The time constraints associated with the deadline lapsing that day would prohibit the appointment of counsel who could ably familiarize themselves with the facts to file an appropriate complaint on her behalf. Accordingly, he requested an extension on her behalf.

Attorney Chang represented that he had been in contact with a trustee for one of the debtors and there were numerous telephone calls from creditors who were also seeking to object to discharge or dischargeability of their debts. Although Chang had not been formally retained, he requested an extension of time to file complaints on behalf of what appeared to be the creditor body at large. Judge Brozman made clear that she was only entertaining requests for extensions from or on behalf of those people who filed, by September 3, 1985, with the bankruptcy court requests to have their debts declared nondischargeable. Chang explained that the creditors were widespread, destitute, confused by the multiple aspects of the proceedings and in turmoil.

Over the objection of counsel for the debtors, Judge Brozman granted extensions for Smith and for the creditors who were informally represented by Chang and for whom she once extended the deadline. As to Smith, Judge Brozman personally questioned her and was satisfied with her

need for a *pro bono* appointment, that being the necessary cause to further extend the November 22 deadline. As to the other group of creditors, Judge Brozman found cause to further extend their time based upon their efforts to communicate with counsel with an eye towards commencing an action and further, to avoid the quick filing of complaints in the remaining hours which complaints may later be subject to sanctions under rule 11 of the Federal Rules of Civil Procedure. Accordingly, an additional thirty days was granted.[5]

*The Plaintiffs*

During this entire time period, including the final extension, various creditors filed complaints to determine whether the debts owed them were dischargeable. The timing of these complaints is critical to the resolution of several legal issues.

### A. JOSEPH HERBERT—85–6556A

### ROBERT M. GORDON, *et al.*—85–6562A

### J. FREDERIC LOHMAN—85–6565A

These plaintiffs (hereinafter the "Herbert Group") all commenced the appropriate adversary proceeding by September 3, 1985, the date set in the Amended Notice issued by the Clerk's Office.

### B. HARRIET SMITH—85–6821A

Smith filed with this court on August 27, 1986 (6 days before the deadline in the Amended Notice) and served the debtors' then attorneys a document in the form of a letter. The first paragraph of the document read as follows:

---

4. Amidst these bankruptcy filings was enormous creditor response. The debtors' law partnership was significantly involved in the structuring of real estate investment deals. Many letters were written by and on behalf of creditors attacking the debtors' conduct as, among other things, fraudulent and deceitful, and describing the debtors' real estate investment operations as "pyramid" or "ponzi" schemes. The National Law Journal published an article depicting the investment schemes and reporting the creditor outrage. *See* The National Law Journal, vol. 17 no. 9 at 31 (Jan. 31, 1985).

5. During the November 22 hearing, debtors' counsel noted their objection to the extensions for if any new deadline was improperly given, the viability of any later extensions would have been moot. Judge Brozman expressly invited the parties to litigate these procedural issues prior to reaching the substantive merits of their complaints and invited a motion under Federal Rule of Civil Procedure 60 to determine the propriety of the extension. That the issue now surfaces instead under the debtors' instant motions to dismiss is not significant for the court is in any event called upon to assess these procedural matters.

Pursuant to 11 U.S.C. Section 523(c) and its provisions for filing of a complaint to determine the dischargeability of any debt, I hereby file a complaint setting forth my reasons for objections to the dischargeability.

Judge Brozman responded to the document with the letter described *supra*. After obtaining *pro bono* counsel, a formal complaint was filed and summons issued on December 23, 1985 which date was within the last ordered extension.

### C. MARY GOLDHAGEN—85-6819A

### RUTH J. POLLACK—85-6819A

### BEATRICE J. TODES—85-6819A

On or about August 28, 1985 a letter was sent to the *trustees* in these bankruptcy cases on behalf of the above three plaintiffs (hereinafter the "Goldhagen Group"). The letter was written by an attorney, apparently a relative of one of these plaintiffs, who stated he was in failing health and was thus unable to follow proper legal procedures. In a two page letter he described the debtors schemes and requested a denial of their discharge.[6] By letter dated September 4, 1985, the Goldhagen letter was forwarded to the Clerk of the Bankruptcy Court by one of the trustees and Judge Brozman responded through a letter of the type described earlier. A complaint was eventually filed on December 23, 1985 by one Iris Altomare, a nonattorney "personal representative" of these plaintiffs.

*The Motions to Dismiss*

In support of their motions to dismiss, debtors first assert that the Clerk's Office acted improperly when it sent out the Amended Notice which set the September 3 deadline. This is so, the debtors argue, both because the time had already expired and because the Clerk acted *sua sponte* with no notice or hearing. Next, the debtors argue that Judge Brozman's October 22 letters which further extended the deadline to November 22 were improper since the extension was granted without notice or a hearing and without a showing of cause. Last, the debtors urge that there was no adequate showing of cause for the final extension granted by Judge Brozman at the November 22 hearing.[7]

The plaintiffs oppose this motion in separate briefs and affidavits submitted to this court. In summary, they first assert that the Amended Notice did not constitute an "extension" since no notice of any deadline for filing dischargeability complaints had initially been given as is required by the Bankruptcy Rules and that the Clerk's Office acted properly in correcting their inadvertent mistake. Next they argue that it was proper for Judge Brozman both to construe their communications as motions to extend their time and to grant those motions without a hearing. Even if it were improper, the creditors assert this court should exercise its inherent equitable powers to prevent an injustice. Last, plaintiffs' assert adequate cause was established at the November 22 hearing to warrant the final extension.

Two other arguments have been raised which are peculiar to individual creditors. Smith argues that her original submission filed with the court on August 27, 1985 and *served* on the debtors' then attorneys was in fact a complaint and should be construed as such. Thus, the last two extensions were not necessary.

The Goldhagen Group, who was represented by their "personal representative,"

---

6. It is not entirely clear whether he was also seeking the debts be declared nondischargeable.

7. The debtors argue that the articulated cause for Smith's extension, the imminent appointment of *pro bono* counsel, was no cause at all since an attorney had some months prior filed a notice of appearance on her behalf. In an affidavit submitted to this court, that attorney, Irving Markowitz, swore there was never any legal agreement between him and Smith regarding these proceedings and that he performed no legal services in connection therewith. Smith's affidavit bears out these statements. Debtors' have shown nothing to the contrary.

Smith's need for *pro bono* counsel was assessed by the Office of the United States Trustee and then by Judge Brozman at the November 22 hearing. As such, we will not now second or third guess those determinations.

has also argued that this court should consider the particular circumstances her plaintiffs are in. She observed that the letter submitted on behalf of the Goldhagen Group to the trustee was penned by a relative who was an attorney but aged and ailing at the time. She claims the plaintiffs did not know of this attorney's inability to handle the matter properly and thus argues the extensions were proper notwithstanding the lack of appearance on behalf of the Goldhagen Group at the November 22 hearing. At the hearing on this motion, defendants suggested that the Goldhagen plaintiffs were not represented by attorney Chang at the November 22 hearing, observing that she ultimately filed a *pro se* complaint. (Tr. p. 21). Ms. Altomare stated that she was unaware of the November 22 hearing (Tr. p. 37). She, nevertheless, argues that cause existed for the final extension.

## II

### The "Amended Notice"

Federal Rule of Bankruptcy Procedure 4007(c) governs the timing for filing dischargeability complaints and reads as follows:

(c) *Time for Filing Complaint Under § 523(c) in Chapter 7 Liquidation and Chapter 11 Reorganization Cases; Notice of Time Fixed.* A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Thus, the sixty day time period runs from the date set for the first meeting of creditors; and further, the court shall give not less than 30 days notice of the time so fixed. As provided by Rule 2002(f),

the clerk, or some other person as the Court may direct, shall give the debtor, all creditors and indenture trustee notice by mail of ... (6) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007....

■ This notice requirement, as embodied twice in the rules, therefore, negates any presumption that creditors are familiar with the time limitation provided by Rule 4007(c). To read the rule otherwise and thereby retain the 60 day deadline for filing dischargeability complaints is contrary to interpretation of the rule as a whole, *see generally Touche Ross & Co. v. Redding-ton,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1978), and ignores the mandatory nature of the phrase "The court *shall* give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002." (Emphasis added). That sentence appears to be the necessary predicate and trigger to the running of the 60 day period. We so hold. Accordingly, the Amended Notice sent out by the Clerk's Office setting the filing deadline at September 3, 1985 was no extension at all; the 60 day period could not have begun to run without satisfying the rule 4007(c) notice requirement.

This conclusion is fortified by several additional considerations. First, the right of creditors to notice of the deadline cannot be denied for creditors have a right to assume they will receive all statutory notices. *See Reliable Electric Co. Inc. v. Olson Construction Co.,* 726 F.2d 620, 622 (10th Cir.1984) citing *New York v. New York, New Haven & Hartford R.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953)[8]; *South Dakota Cement*

---

8. Both these cases arose in the context of denial of notice for filing proofs of claim which is a deadline set by the court in a chapter 11 case. However, the theme of these holdings applies generally. *See, e.g., South Dakota Cement Plant v. Jimco Ready Mix Company,* 57 B.R. 396, 14 C.B.C.2d 1021 (D.S.D.1986).

*Plant v. Jimco Ready Mix Company,* 57 B.R. 396, 14 C.B.C.2d 1021, 1023 (D.S.D. 1986).

Second, the more cogently reasoned cases support the conclusion we reach. Several cases hold that a motion to extend the filing deadline must be made prior to the time set by the Rule 4007(c) has expired. *See, e.g., In re Klein,* 64 B.R. 372 (Bankr.E.D.N.Y.1986); *Ross v. National Bank of Commerce (In re Ross),* 55 B.R. 403 (Bankr.D.C.1985); *Bradco Supply Corp. v. Lane (In re Lane),* 37 B.R. 410 (Bankr.E.D.Va.1984); *In re Floyd,* 37 B.R. 890 (Bankr.N.D.Tex.1984); *American Express Company v. Waldman (In re Waldman),* 33 B.R. 328 (Bankr.S.D.N.Y.1983); *In re Figueroa,* 33 B.R. 298 (Bankr.S.D.N.Y.1983). Those cases, however, are hardly relevant for they do not address the question at issue here, *i.e.:* the inadvertant failure of the clerk to transmit notice of the deadline prior to its expiration.

Two recent district court decisions are far more persuasive. *See South Dakota Cement Plant* and *Francis v. Riso (In re Riso),* 57 B.R. 789 (D.N.H.1986). Both cases dealt with the time period to file objections to discharge which is governed by Federal Rule of Bankruptcy Procedure 4004(a). That rule is substantially similar to 4007(c) which governs debt dischargeability complaints, and rule 4004(a), like rule 2002, also requires notice by the clerk.

In *South Dakota Cement Plant* the creditor did not receive notice of the deadline to object to discharge and the time period lapsed. Thus when the creditor later sought an extension to file an objection, the bankruptcy court denied it as moot, the time period having already expired. The

district court reversed. It found that the notice requirement was mandatory ("the court *shall* give not less than....") and that the creditors had a "right to assume" they would receive all required notices. *See* cases cited *supra.* The case was remanded with the direction that the required notice be given.

In *Riso,* the bankruptcy court had granted a creditor's motion to extend the time to file an objection to discharge and extended that time until October 27, 1984. When the bankruptcy court staff (presumably the clerk's office) sent out their routine notice to the debtor and all creditors, they erroneously set the deadline for filing objections to discharge after expiration of the 60 day period. As in the instant case, the form notice was not signed by the bankruptcy judge but his name was imprinted thereon. In reliance on the erroneous deadline, a creditor filed an objection before the erroneous deadline but subsequent to the correct deadline. The debtor moved to dismiss the objection as untimely and the bankruptcy court denied the motion. The debtor then moved for reconsideration and the bankruptcy court denied that motion. The district court affirmed. Both courts reasoned that the reliance by the creditor on the erroneous deadline outweighed the prejudice to the debtor where both were equally innocent.[9] The *Riso* court further found that the bankruptcy court had the power to extend the objection deadline notwithstanding that the deadline was subsequent to that prescribed in the rules. This is so because the bankruptcy court has "inherent equitable power to correct its own mistake to present [sic] an injustice." *Riso,* 57 B.R. at 793.[10] *See generally Mer-*

---

9. The debtors here make much of the argument that it was the clerk, and not the court, who sent out the erroneous Amended Notice using Judge Brozman's stamped name. Technically, they are correct. However, the clerk's staff is an integral part of the bankruptcy judicial administrative process and while the court did not direct the Amended Notice be sent, it is at the general direction of the bankruptcy court that these notices are transmitted. Accordingly, in *Riso,* where the deadline was extended by the

notice transmitted by court personnel, the courts did not even pause to discuss the issue.

10. To the extent an opposite result was reached in *Montgomery Ward and Company v. Gardner (In re Gardner),* 55 B.R. 89 (Bankr.D.D.C.1985), we disagree. In *Gardner,* notice was given, presumably timely; however the deadline the clerk erroneously gave in the notice stated that the time for filing dischargeability complaints expired two days after the 60 day period. Although the creditor filed the complaint within

*rill, Lynch, Pierce, Fenner & Smith, Inc. v. Tatum* (*In re Tatum*), 60 B.R. 335 (Bankr.D.Col.1986) (extension would be proper where court has made a mistake or where notice of the filing deadline was not given).

Not to the contrary is *Pure In Heart Baptist Church v. Fulton* (*In re Fulton*), 3 B.R. 600, 602 (Bankr.E.D.Mich.1980) which was decided before the promulgation of Rule 4007(c). Notwithstanding the absence of an order fixing the deadline for filing dischargeability complaints in that case, the *Fulton* court held the time period to begin from the date set for the first meeting of creditors. *Id.* at 602. Significantly however, the creditors in *Fulton* received notice of the filing deadline notwithstanding the absence of an order. *Id.* at 601. *See also DeLesk v. Rhodes*, 61 B.R. 626 (9th Cir.Bankr.App.P.1986) (actual notice of proper deadline given).

■ Furthermore, the characterization of a debt as nondischargeable is too critical a facet of the chapter 7 process to allow the deadline to slip by silently or erroneously. Where, as here, there has apparently been good faith reliance by the creditors on the September date, the prejudice to them in denying their day in court outweighs the debtors' plights to obtain a discharge. *Riso*, 57 B.R. at 789.

■ Accordingly, we hold that the 60 day time period which would have began from the date set for the section 341 meeting was not triggered since notice of that deadline was lacking. The Amended Notice was properly issued and the date set therein, September 3, 1985, became the operative initial deadline for filing dischargeability complaints.[11] Therefore, the complaints filed by creditors Herbert, Lohman and Gordon are all timely.

the time set in the notice, but after the 60 day period, the bankruptcy court dismissed the complaint. *But see id.* at f.n. 1 where the *Gardner* court did not consider alternative arguments which were not before the court.

## III

### A. HARRIET SMITH

Having established that September 3, 1985 was the initial deadline, we next turn to the issue of whether Smith's submission on August 27, 1985 was sufficient to be deemed a complaint. If not, it must then be determined whether Judge Brozman's two extensions were proper.

■ While Judge Brozman construed Smith's submission as a motion to extend the time to file a dischargeability complaint, it is patent that what Smith submitted was sufficient to constitute a complaint. Federal Rule of Civil Procedure 8(a) applied to bankruptcy through Federal Rule of Bankruptcy Procedure 7008 is governing and requires only:

(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court's jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief to which he deems himself entitled.

Additionally, Fed.R.Bankr.P. 7008(a) requires the pleading have a reference to the name, number, and chapter of the case under the Code to which the adversary proceeding relates.

Smith's submission clearly satisfied these requirements. Her opening statement, quoted *supra*, not only states that the document is a complaint but also refers to the particular Bankruptcy Code section under which her complaint to determine dischargeability arises. *See* 28 U.S.C. § 157(b)(2)(I). Further, in six substantive paragraphs she describes alleged fraud and misrepresentations concerning a real estate investment made by her with the defendants and does so with some specificity. She also attaches her proof of claim, letters

**11.** Because we have determined that the Amended Notice did not constitute an extension, we need not reach debtors' argument that notice and a hearing were required.

from the debtors and the article from the National Law Journal. *See* Fed.R.Civ.Pro. 10(c) and Fed.R.Bankr.Pro. 7010. This description and characterization of the alleged schemes clearly satisfies Rule 8(a)(2). All that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord First City Bank v. Blewett (In re Blewett),* 14 B.R. 840 (Bankr.App.P. 9th Cir.1981). This standard was plainly met; indeed, defendants do not contend to the contrary. The additional requirements of rule 7008(a) were also satisfied. The document is addressed to the Honorable Tina L. Brozman, U.S. Bankruptcy Court, Room 230, U.S. Courthouse, 40 Foley Square, New York, New York 10007. Although the letter does not contain a caption precisely in the form prescribed by rule 7010, it contains generally the required information: the names of the plaintiff, defendants/debtors, the court and bankruptcy case numbers as well as a designation that it is a complaint. In any event, "a defective caption or even its complete absence is merely a formal error and should never be viewed as a fatal defect." 5 Wright & Miller, *Federal Practice and Procedure* § 1321 at 461 (1969).[12]

▆ Nor did Smith's failure to send the document to the Clerk's Office change the characterization of the document as a complaint. Bankruptcy Rule 4007(c) requires only the filing of a complaint within the prescribed 60 days. This is so because it is the filing of a complaint which commences a civil action or an adversary proceeding. *See Messenger v. United States,* 231 F.2d 328 (2d Cir.1956); *New York State Department of Social Services v.*

*Perrin (In re Perrin),* 55 B.R. 401, 403 (Bankr.D.Dak.1985); Fed.R.Civ.Pro. 3; Fed.R.Bankr.Pro. 7003. Smith's sending her complaint to Judge Brozman is of no moment since a complaint may be filed with the clerk or the judge. *Bomar v. Keyes,* 162 F.2d 136 (2d Cir.) *cert. denied,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947); *Davis v. Krauss,* 478 F.Supp. 823 (E.D.N.Y.1979).

▆ That characterization is also not changed by her failure to obtain issuance of a summons until her formal complaint was filed by counsel. It is the filing of the complaint which commences an action. The rule in this circuit is that until service is completed, the action remains pending in an inchoate state. *Messenger v. United States,* 231 F.2d 328, 329 (2d Cir.1956); *International Controls Corp. v. Vesco,* 556 F.2d 665, 669 (2d Cir.1977). "The mere lapse of time between the date of filing of the complaint and the date of effective service does not cause the complaint to abate." *Grammenos v. Lemos,* 457 F.2d 1067, 1071 (2d Cir.1972) (citing *Messenger,* 231 F.2d 328 (2d Cir.1956)). In fact, Bankruptcy Rule 7004(f) states that if a party fails to serve the summons timely, another summons shall be issued and served. The penalty is not abatement of the action. If considerable delay occurs before a summons is issued and served, the complaint may be subject to a motion to dismiss for failure to properly prosecute. *Grammenos,* 457 F.2d at 1071. No such motion has been brought here for the obvious reason that a summons was issued in December, 1985 upon the filing of a more formal complaint after the appointment of counsel.

## B. THE GOLDHAGEN GROUP

▆ In contrast to Smith's submission, the letter sent on behalf of these plaintiffs

---

**12.** Also supporting our finding that the document is clearly a complaint are Fed.R.Civ.Pro. 8(f) which provides that "pleadings shall be so construed as to do substantial justice" and the well established concept that pleadings of *pro se* parties are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Keiner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam). *Accord Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1985) (per curiam); *Stone v. Chung Pei Chemical Industry Co. Ltd.,* 790 F.2d 20, 22 (2d Cir. 1986); *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986).

was addressed not to the court but to the trustees. The retired attorney representing these plaintiffs first explained his health was failing and as such was unable to properly interpose his objections to the debtors' discharge. Therefore, he requested assistance of the trustees. He next explained in several paragraphs the nature of the purported fraud and deceit and suggested both that denials of discharge and that prosecutions were warranted. The letter ended with "I trust that the foregoing information will assist you in your efforts as Trustees in Bankruptcy."

That letter cannot be construed as a filed complaint. It was addressed to the trustees not the Court. It fails to comply with even a liberal reading of the requirements set forth in Fed.R.Civ.Pro. 8 as discussed earlier. It is simply a letter to the trustee requesting assistance in objecting to the debtors' discharges. The trustees chose not to object but forwarded the letter to the clerk of the court.[13] When Judge Brozman eventually received a copy of the letter, she construed it as a motion to extend their time to file a complaint which she granted. We need not now address debtors' assertion that that extension was improper since there was no notice and a hearing. An evidentiary hearing must be held regarding whether Judge Brozman's order of November 22 granting a further extension to several creditors must be vacated under Fed.R.Civ.Pro. 60(b)(1) and Bankruptcy Rule 9024 to the extent that the extension applied to the Goldhagen Group on the ground that it was mistakenly issued.[14]

Examination of the November 22 transcript reveals that Judge Brozman granted extensions to several creditors because attorney Chang represented that these creditors were attempting to retain him on some level, be it by group or individually, and thus additional time was needed so as to avoid a last minute complaint filing that might be subject to rule 11 sanctions. Judge Brozman specifically included the Goldhagen Group in her extension. But, as noted, it is not at all clear that the Goldhagen Group had heard of Chang, had ever talked with him or that he was not at the November 22 hearing on their behalf. If no one was there on their behalf, the order, as applicable to them, was apparently mistakenly issued.

 Vacating an order under rule 60(b)(1) for mistake is in the sound discretion of the court. *See generally Moore's Federal Practice* ¶ 60.19 (1985) and cases cited therein. Rule 60(b) should be broadly construed so as to do "substantial justice." *Nemaizer v. Baker,* 793 F.2d 58 (2d Cir. 1986). If Judge Brozman's extension was based on her misapprehension that the Goldhagen Group was at least informally represented by Chang, relief under rule 60(b)(1) is appropriate. *See Chanofsky v. Chase Manhattan Corporation,* 530 F.2d 470 (2d Cir.1976) (rule 60(b)(1) relief due to mistake was appropriate in light of misunderstanding between court and counsel).

 It is regrettable that the Goldhagen Group did not engage competent counsel. A failure to request further additional time cannot be so excused. *Cf. Figueroa,* 33 B.R. 298 (Bankr.S.D.N.Y.1983). Nor is it relevant that other creditors may have received extensions. The Goldhagen Group may not "piggyback" on timely motions by other creditors. *In re Floyd,* 37 B.R. 890 (Bankr.N.D.Tex.1984). Accordingly, an evidentiary hearing as to whether the November 22 order was mistakenly entered by the Court is to be held before the

---

13. Early on in the proceedings, the trustees were granted an extension to object to the debtors' discharges. That time lapsed however and notwithstanding the overwhelming creditor outrage, and the lack of documentation, *see* Code § 727(a)(3), concerning their interests in realty sold by the debtors, no objections were ever mounted.

14. Even if the first extension were properly granted, the time would have expired on November 22. No complaint or further request for an extension of time on the Goldhagen Group's behalf surfaced by November 22 and thus the complaint ultimately filed on December 23 would not have been timely if the November 22 extension was based on a mistake.

undersigned at 9:30 a.m. on October 27, 1986.

The motion is therefore denied as to plaintiffs Herbert, Gordon, *et al.*, Lohman and Smith. As to plaintiffs Goldhagen, Pollack and Todes the motion is held *sub judice* pending the evidentiary hearing noted above.

It is SO ORDERED.