In re Larrie S. **ROCKMACHER** and Phyllis Lee Rockmacher, Debtors.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,** Plaintiff/Appellant,

v.

Larrie S. **ROCKMACHER** and Phyllis Lee Rockmacher, Defendants/Appellants.

No. 89–B–20965.
90 Civ. 6143 (GLG).
90 Adv. 6073.

United States District Court, S.D. New York.

April 2, 1991.

D'Amato & Lynch (Richard F. Russell, Michael V. Baronio, of counsel), New York City, for plaintiff/appellant.

Barr & Rosenbaum (John E. Oliva, of counsel), Spring Valley, N.Y., for defendants/appellees.

## OPINION

GOETTEL, District Judge:

Presently before us is plaintiff's appeal from the order of the Honorable Howard Schwartzberg dated August 17, 1990 which dismissed plaintiff's complaint because it was time barred.[1]

## I. FACTS

In September 1984, defendants/appellees Larrie S. Rockmacher and Phyllis Lee Rockmacher, husband and wife, purchased an interest in a limited partnership located in Pennsylvania and known as Jacksonville Associates. In conjunction with this purchase, they issued a promissory note to the seller. Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") thereafter executed a surety bond to guarantee the Rockmachers' payment on the note.[2] In turn, the Rockmachers agreed to indemnify National Union. The Rockmachers failed to make all their required payments and on March 15, 1989, National Union was forced to satisfy its suretyship obligations.[3] National Union then filed suit in the Supreme Court of the State of New York, County of New York, to recover under the indemnification agreement.

In December 1989, however, the Rockmachers filed a chapter 11 bankruptcy petition in the Southern District of New York at White Plains, listing National Union, among others, as a creditor. Thereafter, on February 23, 1990, the bankruptcy court clerk's office sent a notice to all creditors fixing March 30, 1990 as the date for the meeting of creditors. National Union received this notice and its counsel attended the meeting. In fact, National Union's attorney questioned the debtors at this meeting. On June 22, 1990, National Union brought this action against the Rockmachers as a bankruptcy adversary proceeding claiming, *inter alia*, fraud. Specifically, the adversary proceeding complaint asserts claims pursuant to 11 U.S.C. § 523(a)(2)(A), which involves the obtaining of money or credit by false pretenses or fraud, and 11 U.S.C. § 523(a)(2)(B), which concerns the obtaining of money or credit through the use of materially false writings. Had this complaint merely been a straight action for indemnification, as was apparently brought in state court originally, the debt to National Union would have been discharged upon confirmation of the Rockmachers' bankruptcy petition. However, if National Union were to prevail on these claims, it would avoid having its debt discharged following confirmation of the debtors' petition. *See* 11 U.S.C. § 523(a)(2). Thus, Na-

---

**1.** The decision underlying Judge Schwartzberg's order can be found at 117 B.R. 69 (Bankr.S.D.N.Y.1990).

**2.** National Union is a Pennsylvania corporation with its principal place of business located in New York City. It appears that National Union has issued surety bonds for a number of individ-

uals who purchased interests in limited partnerships. *See National Union Fire Ins. v. Woodhead,* 917 F.2d 752 (2d Cir.1990).

**3.** Actually, National Union alleges that it paid $38,500.00 on March 15, 1989 and $40,000.00 on May 16, 1989.

tional Union, as a creditor victimized by the debtors' fraud, may be entitled to one hundred cents on the dollar, to the extent such funds exist, while other creditors generally would receive a lesser percentage based on the provisions of the confirmed bankruptcy petition.

Defendants thereafter moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Bankruptcy Rule 7012(b) on the grounds that the complaint was untimely. Specifically, defendants claimed that the complaint should have been filed within sixty days of the March 30, 1990 meeting of creditors. Since the sixty days expired on May 29, 1990, but the complaint was not filed until June 22, 1990, Judge Schwartzberg granted the motion and this appeal followed. Jurisdiction over this appeal exists pursuant to 28 U.S.C. § 158(a).

## II. DISCUSSION

A creditor seeking to avoid having its claims discharged upon confirmation of a bankruptcy petition by virtue of a debtor's fraudulent actions has the burden of establishing that the debt should be excepted from discharge. 11 U.S.C. § 523(c).[4] The creditor must apply to the bankruptcy court for such relief and the court must determine that the debt is not dischargeable. National Union's complaint properly attempted to achieve this result. The question before us is whether the complaint was timely filed.

Bankruptcy rule 4007(c) provides that "[a] complaint to determine the dischargeability of any debt pursuant to § 523(c) ... shall be filed not later than 60 days following the first date set for the meeting of creditors. The court shall give all creditors not less than thirty days notice of the time

so fixed in the manner provided in Rule 2002." In conjunction, rule 2002(f)(6) requires the bankruptcy court, or some other person directed by the court, to give notice by mail to creditors of "the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 ... as provided in Rule 4007."

In the case at bar, it is uncontroverted that plaintiff received thirty days notice of the March 30 meeting of creditors. As noted, plaintiff's counsel attended and participated in this meeting. At this stage, counsel could have easily calculated what sixty days from March 30 would have been. This was not done and plaintiff's counsel now contends that the reason for this omission was that he expected to receive another notice from the court pursuant to rule 2002 listing the actual bar date for filing complaints to determine dischargeability. No such notice was ever sent by the court and the sixty day time limit passed before plaintiff filed the instant action.

The clerk's office in the United States Bankruptcy Court for the Southern District of New York at White Plains has certain procedures it employs for notifying parties of all relevant dates. In chapter 11 cases involving individual debtors, as opposed to corporations, the last date for filing complaints to determine the dischargeability of debts ordinarily is listed on the order for the meeting of creditors. The clerk's office calculates the bar date and types it onto the order. Thus, a separate notice listing the bar date is not distributed, but rather, all relevant dates are intended to be included on one form. The suggestion by defendants' counsel at oral argument that the clerk's office never gives notice of the bar date in chapter 11 cases, therefore, is erroneous.[5] Unfortunately, in this case the

---

**4.** Somewhat different rules apply when the creditor is not listed on the schedule of creditors. *See* 11 U.S.C. § 523(a)(3)(B). Since there is no dispute that National Union was listed, we need not discuss this provision at this stage. However, we recognize that significant inconsistencies exist between section 523(a)(3)(B) and the position espoused by plaintiff in the case at bar. *See infra* pp. 384–385.

**5.** This suggestion apparently was made in an effort to suggest that if we were to find for the

plaintiff, any creditor of a chapter 11 petitioner who in the past did not receive notice pursuant to rule 2002 could seek to claim that its debt was never discharged upon confirmation of the petition. We will give no weight to this argument since it is clear that such errors occur extremely infrequently. We do note, however, that in chapter 7 proceedings the necessary dates are calculated automatically by computer

clerk's office neglected to make the necessary calculation and failed to include the bar date on the order for the meeting of creditors. It was simply a clerical error. However, regardless of the reason for this omission, it is uncontroverted that plaintiff never received notice from the clerk's office pursuant to rule 2002(f)(6) of the last date for filing complaints to determine the dischargeability of its debt. Notwithstanding this rule, Judge Schwartzberg concluded that since plaintiff's counsel received notice of the meeting of creditors in a timely fashion and could have calculated the bar date on his own, plaintiff should not be given additional time because of a mere clerical error.

Although we apparently are the first non-bankruptcy court in this circuit to address this issue, we are hardly writing on a blank slate. In support of its position, plaintiff cites two bankruptcy court decisions from this circuit. In *In re Rogowski*, 115 B.R. 409 (Bankr.D.Conn.1990), the court focused on the notice requirements of rules 4007 and 2002 and concluded that due process demands that creditors receive all notices the rules contemplate. *Id.* at 414. While this general notion may be applicable in the case before us, and we will address this issue shortly, it is important to note vital distinctions between the facts in *Rogowski* and those before us. In *Rogowski*, the creditor was not informed of either the bar date or the date for the meeting of creditors itself. In fact, the court had instructed the debtors to notify all creditors of these dates, but the debtors failed to do so. In reaching its decision, the court expressed concern with the ironic notion that debtors who had failed to comply with a court order would now be placed in a more favorable position because of their negligence. *Id.* No such concern is necessary in the case before us since the debtors did not fail to do anything required of them. Moreover, while the creditor in *Rogowski* only had notice of the pending bankruptcy of the debtors, National Union received notice of the meeting of creditors and participated in it. National Union had all the information it needed to determine the bar date, but failed to do so.

The second case plaintiff relies on is *In re Schwartz & Meyers*, 64 B.R. 948 (Bankr. S.D.N.Y.1986). This case is directly on point. Bankruptcy Judge Buschman pointed to many of the same factors National Union relies on, such as the fact that creditors have the right to presume they will receive all notices contemplated by the rules and that the rules specifically state that the court "shall" give notice of the bar date. *Id.* at 953. The court concluded that without notice of the bar date, the sixty day period from the date set for the meeting of creditors never began.

As an initial matter, we note that this case does not present the simple application of a party for an extension of time because of excusable neglect. Were this the only issue, we have little doubt that such an extension would have been granted by the bankruptcy court since plaintiff missed the deadline by less than one month. Instead, bankruptcy rule 9006(b)(3) states that the court can enlarge the time for taking actions under rule 4007(c) "only to the extent and under the conditions stated in th[at] rule[ ]." Thus, the excusable neglect standard of rule 9006(b)(1) is explicitly excepted from consideration by rule 9006(b)(3). Rule 4007(c), in turn, permits applications for extensions of time only if the motion is made before the sixty day time period has expired. This rule, therefore, returns us to the precise question before us, which is whether the sixty day period has expired. Defendants contend that the period has expired and that the court has no authority to grant an extension of time at this stage. On the other hand, plaintiff argues that without notice of the bar date, the time period never began and, thus, no application for an extension of time was ever needed.

at the same time the order for meeting of creditors is prepared. Thus, there is no need for independent calculations or typing by the clerk's office. If such a procedure is possible for chapter 7 proceedings, we do not see why it cannot be implemented in chapter 11 proceedings as well. This would avoid future complications similar to those encountered in this action.

Notwithstanding plaintiff's position, and that of Judge Buschman, we find the authorities cited and arguments raised by defendants to be more compelling. Constitutional due process demands that a party receive "notice reasonably calculated, under all the circumstances, to apprise [it] of the pendency of the action and afford [it] an opportunity to present [its] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).[6] In this case, these demands obviously were met. Plaintiff was scheduled as a creditor, received notice of the creditors' meeting, attended the meeting, and participated in it. Moreover, plaintiff's counsel obviously was not a neophyte in the bankruptcy field. First of all, for counsel to even know of the opportunity to avoid discharge of a debt by claiming fraud, an issue about which he questioned the debtors at the creditors' meeting, shows his cognizance of bankruptcy procedures. More importantly, counsel's suggestion that he did not calculate the sixty days himself because he was expecting further notice from the court is belied by the fact that he ultimately filed the complaint, though late, without ever receiving any notice from the court. Counsel obviously knew of the rule, but failed to comply with it, notwithstanding the fact that he had all the necessary information before him to protect his client's rights.

While the bankruptcy rules certainly are meant to give creditors notice of relevant dates, they also "promote the expeditious and efficient administration of bankruptcy cases by assuring participants in bankruptcy proceedings 'that, within the set period of 60 days, they can know which debts are subject to an exception to discharge.' " *In re Sam*, 894 F.2d 778, 781 (5th Cir.1990) (quoting *Neeley v. Murchison*, 815 F.2d 345, 347–48 (5th Cir.1987)). The error here was the clerk's. There is no reason why the debtors, who were innocent of any wrongdoing, should be penalized because of it. To allow National Union to benefit because of a mere clerical error, when astute counsel had all the necessary information before him, defeats the purpose behind the strict and expedited time periods placed in the bankruptcy rules. If plaintiff's argument were to be accepted, a minor clerical error could lead to an extensive delay in the administration of bankruptcy proceedings. This is not consistent with the bankruptcy rules. Another inconsistency recognized by Judge Schwartzberg, and other courts, is that requiring strict compliance with rule 4007 would allow a creditor like National Union, who is scheduled as a creditor and has received notice of the meeting of creditors, albeit deficient notice, to be placed in a better position than an unlisted creditor who somehow learns of the pending proceedings in time to protect its rights. This unscheduled party would have its claim discharged under section 523(a)(3)(B) merely because it learned of the bankruptcy from an outside source while a creditor like National Union would be allowed to demand technical compliance with the rules.[7] Such inconsistencies can-

---

6. Plaintiff cites *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), in support of its contention that its due process rights have been violated. In that case, the Court concluded that publication in a newspaper was insufficient notice to a creditor. The specific language of the opinion cited by plaintiff is that "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before the claims are forever barred." *Id.* at 297, 73 S.Ct. at 301. Initially, we note that the Court's decision was based on a section of the Bankruptcy Act, which has since been superceded by the Bankruptcy Code, that made the selection of certain bar dates discretionary with the court. To that extent, the holding is distinguishable from the facts before us since Judge Schwartz-

berg had no discretion in setting the bar date; the bar date was sixty days following the date set for the meeting of creditors. *See In re Sam*, 894 F.2d 778, 781 (5th Cir.1990). Moreover, the Court went on to state that notice requires "a reasonable opportunity to be heard." 344 U.S. at 297, 73 S.Ct. at 301. National Union was afforded such an opportunity, but failed to seize it.

7. The relevant portion of section 523 provides the following:

(a) A discharge ... does not discharge an individual debtor from any debt—

....

(3) neither listed nor scheduled ... in time to permit—

....

not be countenanced. *See Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir.1987).[8]

The position we have adopted is supported by appellate authority from other circuits. In *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987), the Fifth Circuit dismissed a late-filed complaint in a case arguably stronger for the creditor than that before us. In *Neeley*, the creditor received notice of the meeting of creditors and his attorney attended the meeting. The notice did not contain a bar date for claims to determine dischargeability and when the creditor's attorney asked the clerk's office whether such a date had been set, the clerk's office erroneously responded that no such date had been set. The complaint was eventually filed ten days late and the bankruptcy court dismissed it. In upholding the district court's affirmance of the bankruptcy court's decision, the court of appeals referred to the inconsistencies alluded to earlier and while not condoning the clerk's actions, stated that "because [the creditor] had notice of the bankruptcy proceedings and more than ample opportunity to protect his rights under § 523(c), the purpose of the notice provision was met." *Id.* at 347; *see also In re Price*, 871 F.2d 97, 99 (9th Cir.1989); *In re Rhodes*, 61 B.R. 626, 630 (9th Cir. BAP 1986).

## III. CONCLUSION

For all the foregoing reasons, the decision and order of Judge Schwartzberg is affirmed.

SO ORDERED.

---

(B) ... timely request for a determination of dischargeability of such debt ... unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.
11 U.S.C. § 523(a)(3)(B).

8. While we have suggested that the notice National Union received was technically deficient, we note that while rule 2002 states that a creditor shall be given notice of the bar date, it does not specifically state that the failure to give such notice is grounds for extending the sixty day time period.