**In re Barry J. PIESNER and Linda E. Piesner, Debtors.**

**Bankruptcy No. 091–70162–21.**

United States Bankruptcy Court, E.D. New York.

July 19, 1991.

Edward Zinker, Zinker & Gelfand, Smithtown, N.Y., for debtors.

Penny Stark, Corwin & Solomon, New York City, for Israel Discount Bank of New York.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Israel Discount Bank of New York ("IDB") brought on, by Order to Show Cause, an application to extend its time to object to the dischargeability of the debtors and to file a complaint to determine the dischargeability of a debt. As part of the Order to Show Cause, the Court extended the time through, and including, the date of the hearing and the determination of IDB's application.

The Debtors, Barry J. Piesner and Linda E. Piesner, have cross-moved for an order vacating this Court's extension of the time to object to discharge and dischargeability. They ask that, insofar as the order extends IDB's time, it be vacated *nunc pro tunc* to the date of the order, May 30, 1991.

## FACTS

Barry and Linda Piesner filed a voluntary petition under Chapter 7 on January 30, 1991. The Clerk sent out notice to creditors that a meeting pursuant to 11 U.S.C. § 341 would be held on March 11, 1991 and that May 10, 1991 was the last day for the filing of objections to the discharge of the debtors and for the filing of a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(c).

IDB did not receive a copy of this notice because it was not listed as a creditor by the Debtors. The Debtors instead listed as a creditor American Universal Mortgage Banking, Inc. ("American"), IDB's assignor. Barry Piesner, as President of Horseblock–Medford Associates, Inc. ("Horseblock") had executed a note to American in the amount of $265,000 secured by a second mortgage against property owned by Horseblock. Thereafter, American assigned the second mortgage on February 17, 1989, in part to IDB and in part to Nan Theodore. The assignment was duly recorded in the Office of the Clerk of the County of Suffolk, State of New York. IDB, thereafter, became the assignee of a third [1] note in the amount of $125,000 from Horseblock to American secured by a third mortgage, also duly recorded in the Office

---

1. Barry Piesner, as President of Horseblock, executed a first note in the amount of $250,000, secured by a first mortgage, which is not part of the controversy here.

of the Clerk of the County of Suffolk. The loans represented by the second and third notes and the mortgages were personally guaranteed by Barry Piesner.

IDB first learned that Mr. Piesner had filed for relief on March 26, 1991 while in attendance at a meeting of creditors in the bankruptcy proceeding filed by Horseblock. At that meeting counsel for Horseblock disclosed that a Chapter 7 petition had been filed by Barry Piesner.

Upon receipt of this information, IDB, by its attorneys, Corwin & Solomon, P.C., wrote the Clerk of the Hauppauge Bankruptcy Court, on April 1, 1991, requesting a copy of the docket and petition in "In re Barry and Linda Piesner, Case Number 091–70162–21." The Clerk responded on April 11, 1991 that the request would be filled on receipt of $11.50 to cover the cost of the requested copies. The check was forwarded on April 15th and the documents in question were received on April 30th by IDB's attorneys.

IDB has attached to its motion papers the first page of the petition sent to it in response to its request, but not a copy of the docket, presumably sent to it the same time. The first page of the docket notes that the first meeting of creditors is scheduled for March 11, 1991 and the last day to oppose discharge is May 10, 1991.

On May 16, 1991, Corwin & Solomon, as attorneys for IDB, filed a notice of appearance in this bankruptcy proceeding, together with a request for service of notices.

Corwin & Solomon did nothing further until May 30, 1991, when it brought on the present motion seeking an extension of its time to object to discharge and dischargeability. Its application provides no information respecting why it deems Barry Piesner's debt to it to be nondischargeable or what grounds it has for opposing discharge.

## DISCUSSION

11 U.S.C. § 523 enumerates the exceptions to discharge. One exception excludes unscheduled debts. § 523(a)(3). However, not all unscheduled debts are excepted from discharge. Despite the lack of scheduling, a debt will be discharged if the creditor had notice or actual knowledge of the case in time to file a proof of claim and, if the debt is of the kind covered by certain other exceptions to dischargeability, (§ 523(a)(2), or (4) or (6)) in time to request a determination of the dischargeability of such debt. 11 U.S.C. § 523(a)(3). 11 U.S.C. § 523(a)(2), broadly speaking, covers fraudulent representations; § 523(a)(4) covers fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; and § 523(a)(6) covers willful and malicious injury to the person or property of another entity. To except a debt from being discharged on the ground that it is of the kind excepted from discharge under § 523(a)(2), (4) or (6) requires an adversary proceeding. 11 U.S.C. § 523(c).

Bankruptcy Rule 4004 provides that in a Chapter 7 liquidation case, a complaint objecting to a debtor's discharge shall be filed no later than 60 days following the first date set for the meeting of creditors pursuant to Section 341(a). Bankruptcy Rule 4004(a). The 60 day period may be extended. On motion of any party in interest, after a hearing on notice, the Court may extend for cause the time for filing a complaint. However, the Rule requires the motion to be made before such time has expired. Bankruptcy Rule 4004(b). Not less than 25 days notice of the time for filing a complaint objecting to discharge must be given all creditors. Bankruptcy Rule 4004(a).

Bankruptcy Rule 4007, dealing with the determination of the dischargeability of a debt, is similar. It specifies that a complaint under 11 U.S.C. § 523(c) in a Chapter 7 case shall be filed no later than 60 days following the first date set for the meeting of creditors. It goes on to require 30 days notice of the time so fixed to be given creditors. Like Bankruptcy Rule 4004, it authorizes the extension of such time, after hearing on notice, if a motion is made before the time has expired. Bankruptcy Rule 4007(c).

Bankruptcy Rule 9006, dealing generally with time periods, permits the Court to enlarge the time before the expiration of a specified period if a motion is made before the expiration of the original period or, on

motion after the expiration of the specified period, "where the failure to act was the result of excusable neglect." Bankruptcy Rule 9006(b)(1), (2). However, the court is prohibited from enlarging the time for taking action under Rules 4004(a) and 4007(c) except to the extent and under the conditions stated in those Rules. Rule 9006 does not authorize the Court to extend for excusable neglect the deadlines under Rule 4007 or Rule 4004.

From the foregoing recital, it is evident that the Bankruptcy Rules and the Bankruptcy Code are not totally congruent. The Code provides that a debt is discharged if the creditor had notice, or actual knowledge, of the case in time to take protective action regardless how he secured such notice. On the other hand, the Rules are very specific in requiring 25 days notice from the Clerk of the time to object to discharge and 30 days notice of the time to object to dischargeability. Such notice is required despite the fact that the Code makes clear that the time both to object to discharge and to dischargeability expires 60 days following the first date set for the meeting of creditors. Thus, anyone with notice of the date of the first meeting can calculate the cutoff date for himself.

Admittedly, IDB's motion was made after the expiration of the 60 days for objecting to the dischargeability of a debt and for moving for an extension of that period. IDB urges that it should not be held to the deadline because it was not sent notice of it by the Clerk. The question then is whether failure to give a creditor notice of the deadline permits action after it has passed.

The answer given by every Court of Appeals which has considered the matter and by most of the lower courts is in the negative. *Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987); *In re Compton,* 891 F.2d 1180 (5th Cir.1990); *In re Sam,* 894 F.2d 778, 781 (5th Cir.1990) ("Technical compliance with Rule 4007(c)'s requirement that the creditor receive 30 days notice of the bar date frustrates the expeditious and efficient administration of cases in the bankruptcy court and is unnecessary to provide adequate notice."); *In re Price,* 871 F.2d 97, 99 (9th Cir.1989) (Actual notice to counsel of the proceedings "in time to file a complaint, or at least to file a timely motion for an extension of time", is sufficient.); *In re Walker,* 927 F.2d 1138, 1145 (10th Cir. 1991); *In re Alton,* 837 F.2d 457 (11th Cir.1988) (Creditor has duty to inform himself of bar dates after learning of the bankruptcy.); *In re Rockmacher,* 117 B.R. 69 (Bankr.S.D.N.Y.1990), *aff'd.,* 125 B.R. 380 (S.D.N.Y.1991); *In re Summit Corp.,* 109 B.R. 534 (D.Mass.1990); *In re Rhodes,* 61 B.R. 626, 630 (9th Cir. BAP 1986); *In re Tosenberger,* 67 B.R. 256 (Bankr.N.D.Ohio 1986).

In *Neeley v. Murchison, supra,* the creditor, Neeley, filed an objection to dischargeability ten days after the 60 day limit for filing a dischargeability complaint had run. The creditor claimed that he had received no notice of the dischargeability date, which was not denied. The bankruptcy court dismissed the creditor's claim as time barred and was affirmed by the District Court and by the Court of Appeals. The Fifth Circuit pointed out that under the Code, even a nonscheduled debt is discharged if the creditor had notice or actual knowledge of the case in time to make a request for determination of dischargeability. The Court noted that to make the notice critical would place the creditor who had written notice of the bankruptcy, albeit deficient notice under the Rule, in a better position than the unlisted creditor. The Court said: "[T]hat because Neeley had notice of the bankruptcy proceedings and more than ample opportunity to protect his rights under Section 523(c), the purpose of the notice provision was met." *Neeley v. Murchison, supra,* at 347.

The Ninth Circuit in *Price,* following *Neeley v. Murchison,* said:

The fact that [the debtor] failed to list ... a creditor did not relieve [the creditor] of his obligation to take timely action to protect his claim. *See In re Alton,* 837 F.2d 457, 460 (11th Cir.1988) ("The statutory language [of section 523(a)(3)(B)] clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official no-

tice from the court of various pertinent dates."); *Neeley v. Murchison,* 815 F.2d 345, 347 (5th Cir.1987).

*In re Price, supra,* at 99.

IDB relies on *In re Schwartz & Meyers,* 64 B.R. 948 (Bankr.S.D.N.Y.1986), which stands almost alone and which has been rejected even within the Southern District where it was decided. In that case, under peculiarly appealing circumstances, in which the Clerk's Office originally sent out a notice which failed to advise creditors of the last day to file complaints to determine dischargeability and then sent out a corrected notice, Judge Buschman of the Southern District of New York, held that creditors who were not notified of the deadline imposed by Rule 4007(c) were not barred from objecting to the discharge of the obligations of the debtors to them. Judge Buschman held that the 60 day time period which would have begun from the date set for the Section 341 meeting was not triggered because notice of the deadline was lacking. *Id.* at 955.

*Neeley v. Murchison, supra,* which has become the leading precedent in this area, explicitly rejected *Schwartz & Meyers.* Moreover, Bankruptcy Judge Schwartzberg, who also sits in the Southern District of New York does not agree with the conclusion reached in *Schwartz & Meyers.* In *In re Rockmacher, supra,* he held that upon receiving actual notice of a bankruptcy case, a creditor, whether actually scheduled or not, must consult Bankruptcy Rule 4007(c) and calculate the 60 day bar date following the date set for the meeting of creditors held pursuant to 11 U.S.C. § 341(a). In this Chapter 11 proceeding, where the notice sent creditors likewise failed to include a bar date for filing complaints to determine the dischargeability of the debtor's debts, he held, contrary to Judge Buschman, that the omission of a bar date does not excuse the creditor from complying with the 60 day period. His decision was affirmed by the District Court. *In re Rockmacher,* 125 B.R. 380 (S.D.N.Y.1991).

In this case, IDB learned on March 26, 1991 that Barry Piesner had filed under Chapter 7. At that point in time, 40 days remained before the time to file a complaint objecting to dischargeability would run. When IDB's attorneys received a copy of the docket on April 30, 1991, they knew that the first meeting of creditors had been scheduled for March 11th. Automatically this made May 10th, the date 60 days after March 11, 1991, the last date to oppose discharge. They still had ten days within which they could have made the same motion as they belatedly made on May 30th. There was ample time to protect IDB's rights. There is wholly lacking here a demonstration of excusable neglect even assuming that "excusable neglect" was pertinent. Even if there was inadequate time to file a complaint by the time IDB learned of the May 10th deadline there was ample time to file a motion for an extension of time. Moreover, IDB could easily have found out the deadline for filing a complaint without waiting to receive a copy of the petition.

Pertinent is the total absence from the motion papers of any demonstration of merit with respect to the issue of dischargeability or discharge. There is not even a suggestion in IDB's papers of its grounds for opposing dischargeability.

In sum, the present motion is untimely and without merit. Accordingly, the Court is denying IDB's motion.

It is unnecessary to decide the cross-motion because IDB has not taken advantage of the extension to file a complaint and, with the denial of IDB's motion, the interim relief IDB was granted becomes academic.

Settle Order.