**In re Daniel R. BUCKNUM, dba Bucknum, Levine & Smith, Debtor.**

**Joe W. MOODY, Bernice H. Moody, Appellants,**

v.

**Daniel R. BUCKNUM, dba Bucknum, Levine & Smith, Appellee.**

**No. 90–55178.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1990.

Decided Dec. 9, 1991.

Before WALLACE, Chief Judge, O'SCANNLAIN and RYMER, Circuit Judges.

PER CURIAM:

The question before us is whether the Moodys, who are a properly scheduled judicial lienholder in this Chapter 7 bankruptcy proceeding, received notice of the filing deadline for a nondischargeability complaint sufficient to put them at risk for failing to meet that deadline. The Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court's dismissal of the Moodys' complaint on grounds that it was not timely filed. *See In re Bucknum*, 105 B.R. 25 (Bankr. 9th Cir.1989). The Moodys now appeal, and we affirm.

## I

The relevant facts are not in dispute. The Moodys obtained a state court judgment for malicious prosecution against Bucknum, who is an attorney, in the amount of $746,802.52. On March 13, 1988, Bucknum voluntarily filed a Chapter 7 petition and properly listed the Moodys as a judgment creditor. Shortly thereafter, in early April 1988, the Moodys and their counsel obtained a copy of the bankruptcy court's file in order "to ensure that the MOODY'S [sic] debt was properly scheduled, and that their name and address were properly scheduled ..., so that the MOODY'S [sic] could be assured of receiving proper notice of the bankruptcy proceedings." Declaration of M. Bradford, Plaintiffs' Attorney of Record, at 5, *In re Bucknum*, No. 88–01954 (Bankr.C.D.Cal. Nov. 8, 1988). On April 12, 1988, the bankruptcy court entered an order setting the statutory meeting of creditors for May 10, 1988, and setting the deadline for filing a section 523(c) nondischargeability complaint for July 11, 1988. *See* 11 U.S.C. §§ 341(a), 523(c) (1988).

It was at this point that the Moodys' troubles began. Bankruptcy Rule 4007(c) provides:

A complaint to determine the dischargeability of any debt pursuant to

Meredith Bradford, Walnut Creek, Cal., for appellants.

R. Gibson Pagter, Jr., Pagter Law Corp., Santa Ana, Cal., for appellee.

§ 523(c) of the Code shall be filed *not later than 60 days following the first date set for the meeting of creditors* held pursuant to § 341(a). The court shall give all creditors *not less than 30 days notice of the time so fixed* in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made *before the time has expired.*

Fed.R.Bankr.P. 4007(c) (emphasis added). Pursuant to this directive, Bankruptcy Rule 2002(f) provides that:

the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of ... the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007.

*Id.* 2002(f)(6).

On July 11, 1988, the Moodys contacted the bankruptcy court's clerk and learned that it was the last day on which to file a section 523(c) nondischargeability complaint. On the following day, the Moodys dispatched by express mail a motion for an extension of time and a proposed complaint. The bankruptcy clerk filed these two documents on July 13, two days after the deadline. Citing Rule 4007(c) and other laws, the bankruptcy court denied the Moodys' motion as untimely on July 19. Bucknum then moved to dismiss the complaint itself as untimely. In opposition, the Moodys asserted that they had not received actual notice of the deadline as required by the Rules. The only evidence in support of their contention, however, was their own declaration; the bankruptcy court's file contained a certificate of mailing indicating that notice of the bar date had indeed been sent to the Moodys.

The bankruptcy court dismissed the complaint. The court reasoned that even if the Moodys had not received proper notice—a contention that the court found unproven—they did have actual knowledge of the bankruptcy proceedings, which constituted sufficient inquiry notice of the filing dead-line under *In re Price,* 79 B.R. 888 (Bankr. 9th Cir.1987) (*Price I*), *aff'd,* 871 F.2d 97 (9th Cir.1989) (*Price II*). The BAP agreed and affirmed.

We have proper jurisdiction under 28 U.S.C. § 158(d), and we apply the same standards of review to the bankruptcy court's decision as did the BAP. *In re Ellsworth,* 722 F.2d 1448, 1450 (9th Cir. 1984). We presume the bankruptcy court's findings of fact correct unless clearly erroneous, *see* Fed.R.Bankr.P. 8013, and we review its interpretation of the Bankruptcy Code and Rules de novo. *See In re Hill,* 811 F.2d 484, 485 (9th Cir.1987).

## II

█ It is undisputed that the Moodys had actual *knowledge* of Bucknum's filing for bankruptcy prior to the court's entering of the scheduling order on April 12, 1988. The Moodys and their attorney had obtained copies of the bankruptcy court's file and had communicated with Bucknum's attorney about the proceedings both by telephone and by mail. The Moodys, however, insist that they never received actual *notice* of the meeting of the creditors or the bar date as required by the Bankruptcy Rules, and they contend that any alleged *inquiry* notice was insufficient—both as a matter of bankruptcy law and as a matter of constitutional due process.

## A

█ The Moodys' first argument is purely factual, and on factual matters we must defer to the bankruptcy court unless its findings are clearly erroneous. The bankruptcy court was not persuaded by the Moodys' declaration that they never received the court's notice, and we have no reason to disturb that judgment. As the BAP has explained in a similar case:

Where the bankruptcy court record shows a certificate of mailing and a complaining party submits an affidavit declaring notice was not received, the weight of the evidence favors the court's certificate. If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mail-

ing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled. For this reason, an allegation that no notice was received does not, by itself, rebut the presumption of proper notice. *In re American Properties*, 30 [B.R.] 247, 250 (Bankr.D.Kan.1983).

*In re Ricketts*, 80 B.R. 495, 497 (Bankr. 9th Cir.1987).

Mail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee. *American Properties*, 30 [B.R.] at 250. A certificate of mailing stating that notice of the bar dates was sent to all creditors or proof of a custom of mailing, raises the presumption that notices were properly mailed and therefore received. *Id.* The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished. [*Cf. Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) ("the standard of proof for the dischargeability exceptions [listed] in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard").]

... Appellant has not overcome the presumption.

*Id.* at 498–99 (Jones, J., concurring).[1] A certificate of mailing was present in the Bucknum bankruptcy file. *In re Bucknum*, 105 B.R. 25, 27 (Bankr. 9th Cir.1989). The BAP held that this created a presumption of receipt of notice that the Moodys failed to overcome. *Id.* We agree.

### B

In light of the Moodys' failure to overcome the presumption of receipt that arises

from the certificate of mailing, we need not address their second argument that actual knowledge of the bankruptcy proceedings is insufficient to satisfy the notice requirement as a matter of law.

### C

Appellee's request for damages and extraordinary costs under Rule 38 is denied; ordinary costs shall be taxed against appellants pursuant to Rule 39. *See* Fed. R.App.P. 38, 39(a).

AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring:

I concur wholeheartedly in the court's judgment and in Parts I, II–A, and II–C of the opinion. However, because neither the bankruptcy court nor the BAP expressly rested its holding on the Moodys' failure to overcome the presumption of receipt, I believe that we should address the further question—to which the parties have devoted almost complete attention—of whether the Moodys' actual knowledge of the bankruptcy sufficed to put them at risk for failing to meet the filing deadline. I would answer that question in the affirmative.

### I

Even assuming that the Moodys did not receive actual notice, their arguments still must fail. Both this court and the BAP have previously held that a creditor's actual knowledge of a debtor's bankruptcy does indeed suffice to put that creditor on notice of the filing deadline for a nondischargeability complaint. *See, e.g., Price II*, 871 F.2d at 99; *Ricketts*, 80 B.R. at 497; *Price I*, 79 B.R. at 891–93; *Rhodes*, 61 B.R. at

---

**1.** The Moodys appear to argue that dismissal of their complaint was so premature that it deprived them of the opportunity even to look for the "clear and convincing evidence" that the law now requires them to have in order to rebut the presumption of receipt. We reject this argument. It is well settled that the bankruptcy court has no discretion to grant an untimely motion for an extension of the filing deadline under section 523(c). *See* Fed.R.Bankr.P. 4007(c); *Hill*, 811 F.2d at 486–87; *Price I*, 79 B.R. at 890; *In re Rhodes*, 61 B.R. 626, 630 (Bankr. 9th Cir.1986). It follows a fortiori that

the court has no discretion to grant additional time for discovery in order to support an untimely *motion for an extension*. The claimant should therefore attach to his motion (or to his opposition to the debtor's motion to dismiss) whatever evidence he has in support. "Evidence might include testimony of a clerk's office employee that notice was not sent or proof that none of the listed creditors received notice." *See Ricketts*, 80 B.R. at 498–99 (Jones, J., concurring). The Moodys have offered no such evidence here.

630; *see also In re Alton*, 64 B.R. 221, 224 (Bankr.M.D.Fla.1986), *aff'd*, 837 F.2d 457 (11th Cir.1988) (per curiam); *cf. In re Gregory*, 705 F.2d 1118, 1123 (9th Cir.1983). We have also rejected the claim that such inquiry notice is inadequate to put the creditor at risk as a matter of due process. *See In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1430–31 (9th Cir.1990); *Price II*, 871 F.2d at 99; *Gregory*, 705 F.2d at 1122–23.

The Moodys nonetheless insist that *Price I* and similar cases are distinguishable. According to their reading, *Price I* stands for the proposition that actual knowledge of the bankruptcy proceedings constitutes sufficient inquiry notice of the bar date for unscheduled creditors but not for scheduled creditors. Because the Moodys themselves are a scheduled creditor, they contend that *Price I* does not apply and that only actual notice will satisfy the Bankruptcy Rules. The bankruptcy court and the BAP both rejected this argument, however, and I similarly would reject it for four reasons.

### 1

First, despite the Moodys' contentions, *Price I* did not base its holding on a distinction between scheduled and unscheduled creditors. It only mentioned the difference in the course of distinguishing a case that the appellant there had cited and upon which the Moodys similarly rely: *In re Schwartz & Meyers*, 64 B.R. 948 (Bankr. S.D.N.Y.1986). Even then, the *Price I* court did not rely upon the scheduled-unscheduled distinction as its reason for not following *Schwartz & Meyers*. Rather, the court found the case before it critically different for another reason.

In *Schwartz & Meyers*, the Southern District of New York held that actual notice under Rule 4007(c) is the "necessary predicate and trigger to the running of the 60 day [complaint filing] period" and that when the bankruptcy court fails to give that notice, the filing period never commences and thus cannot expire. *Id.* at 953. In support of its holding, the court opined that "creditors have a right to assume they will receive all statutory notices." *Id.*

The claimant in *Price I* was not permitted to benefit from this holding because of a factual difference between the two cases. In *Schwartz & Meyers*, the initial notice distributed by the bankruptcy clerk accidentally failed to advise *all* the scheduled creditors of the last day upon which to file a section 523(c) complaint. After expiration of what should have been the relevant sixty days, the clerk mailed an amended notice, confessing the error and granting a new sixty days. The *Schwartz & Meyers* court held that the second sixty days was the relevant filing period.

The claimant in *Price I* was not permitted to benefit from this holding because there had been no similar blanket error by the bankruptcy clerk in his case. Rather, the claimant's failure to receive actual notice in *Price I* "was the result of the debtor's failure to properly schedule the [claimant] and the [claimant's] failure to ensure protection of his claim by making an inquiry into the bankruptcy proceedings." *Price I*, 79 B.R. at 890–91. In short, the relevant distinction between *Schwartz & Meyers* on the one hand and *Price I* and this appeal on the other concerns the *reason* for the creditor's lack of notice, not his *status* as a scheduled or unscheduled creditor. When lack of notice is partially attributable to the creditor's own delinquency, his rights are justifiably at risk. A creditor with actual knowledge of the bankruptcy "must inquire as to the bar date for filing a nondischargeability complaint." *Id.* at 891. Here, as in *Price I*, the bankruptcy clerk apparently committed no error.

### 2

Second, this court has affirmed *Price I* in *Price II*, 871 F.2d 97 (9th Cir.1989). In so doing, we made no mention of the distinction between scheduled and unscheduled creditors. Rather, we simply held that "it is incumbent on *the creditor* to institute an action to have the debt declared exempt from the bankruptcy proceedings, provided that he has notice *or actual knowledge* that the debtor is in bankruptcy. If *the creditor* fails to act, the debt is dis-

charged." *Price II,* 871 F.2d at 98 (emphasis added); *see also id.* at 99 ("The fact that Price failed to list Lompa as a creditor did not relieve Lompa of his obligation to take timely action to protect his claim."). *Price II* is directly on point and warrants affirmance here.

### 3

Third, even if we were to accept the Moodys' argument that the *Price* decisions are distinguishable because the Moodys are a scheduled creditor and the claimant in *Price* was not, other cases have not recognized that distinction as controlling.

In *Gregory,* for example, this court rejected the argument of a claimant who, like the Moodys, was a scheduled state-court judgment creditor and who insisted that actual knowledge of the bankruptcy proceedings was inadequate to put him on notice of the deadline by which he had to object to confirmation of the bankruptcy plan. We explained:

> When the holder of a large, unsecured claim such as [the claimant here] receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril.

*Gregory,* 705 F.2d at 1123. Even more on point, on facts strikingly similar to those at issue here, the BAP has held that a scheduled judgment creditor who has actual knowledge of the debtor's bankruptcy is indeed on inquiry notice of the filing deadline for a section 523(c) complaint. *See Rhodes,* 61 B.R. at 630; *see also Price I,* 79 B.R. at 893 (favorably citing *Rhodes*).

The Fifth Circuit reached a similar conclusion in *Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987), a decision that was approvingly cited in both *Price I* and *Price II. See Price I,* 79 B.R. at 892; *Price II,* 871 F.2d at 99. In rejecting the appeal of a scheduled judgment creditor, *Neeley* held that "§ 523(c) of the Code, which Rule 4007 is designed to implement, places a heavy burden on the creditor to protect his rights: a debt of the type presented here is automatically discharged unless the creditor requests a determination of dischargeability" in a timely fashion. *Neeley,* 815 F.2d at 347.[1]

### 4

Finally, the Bankruptcy Code and Rules themselves articulate no appreciable distinction between scheduled and unscheduled creditors for purposes of determining what constitutes sufficient notice of the filing deadline for nondischargeability complaints. If Congress had intended to make such a distinction, it certainly could have done so.[2]

I do not mean to suggest that there is *no* meaningful distinction between these two classes of creditors; the bankruptcy court clearly is required to give actual notice of the bar date to scheduled creditors, whereas unscheduled creditors usually must fend for themselves. The question here, however, is whether any meaningful distinction

---

1. The facts in *Neeley* were substantially similar to those in *Schwartz & Meyers:* the bankruptcy court's clerk provided actual notice to the creditors but inadvertently failed to fill in a blank on the notice form to indicate the bar date. The *Neeley* court concluded that the creditor's untimely complaint was still barred and expressly rejected the reasoning of *Schwartz & Meyers* in the process. *Neeley,* 815 F.2d at 347. I cite *Neeley* here only for its holding that a scheduled creditor with inquiry notice cannot plead ignorance of the bar date. I express no opinion on *Neeley's* rejection of *Schwartz & Meyers* or on its determination that a creditor can still be on notice even when the bankruptcy clerk is largely to blame.

2. Nor do I read section 523(a)(3)(B) as establishing such a distinction. That provision expressly provides that actual knowledge of the debtor's bankruptcy *will* bar an *unscheduled* judgment creditor (with a claim like the Moodys) from filing an untimely challenge to the discharge of his claim. 11 U.S.C. § 523(a)(3)(B) (1988). It does not say, however, that actual knowledge *will not* bar a *scheduled* creditor from filing an untimely challenge. *See Neeley,* 815 F.2d at 347. Nor may one infer from the absence of an analogous provision relating to scheduled creditors that their situation differs. Congress may not have seen the need for such a provision since scheduled creditors are presumed to receive actual notice and the problem of what to do when they do not may have been overlooked.

persists in the case of a scheduled creditor who has not received actual notice if (a) the bankruptcy court has done all in its power to provide that notice and (b) the creditor has timely and independent knowledge that his rights are at risk and yet does not act in time to protect them. I would hold that it does not. The case law supports that holding, and the Bankruptcy Code and Rules do not contradict it. When a scheduled creditor is on inquiry notice, the function of the notice requirement has been served, and the creditor may not hold back his complaint in reliance upon actual notice to which he is admittedly entitled but which, though sent, may fail to arrive.

## II

In light of the foregoing, I would hold that the Moodys had inquiry notice of the bar date through their actual knowledge of Bucknum's bankruptcy and that such notice is sufficient to satisfy the law's notice requirement.

RYMER, Circuit Judge, concurring:

I concur in the per curiam opinion. Because Judge O'Scannlain has written on the notice issue, I write separately to underscore that in view of our conclusion that notice was given, it is unnecessary to reach the issue of what happens if notice is not given. Unlike my colleague, I believe there is much to commend a different rule for scheduled creditors, which the Moodys are, and unscheduled creditors, such as the Prices were. *Cf. In re Price*, 871 F.2d 97, 99 (9th Cir.1989) ("Here the creditor was not notified by the court within the prescribed time because he was not listed by the debtor."). I would therefore encourage a court faced with the need to resolve the question to consider afresh the difference between scheduled and unscheduled creditors, their expectations about notice, and the statutory scheme applicable to each.