NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1150-MkBePa |
| MIGUEL LEON; GREGORY LEE, | Bk. Nos.  RS 10-15045-MJ |
| | RS 10-15079-MJ |
| Debtors. | (Consolidated Bankruptcy Cases) |
| | Adv. Nos. RS 11-01980-MJ |
| DONOVANT GRANT, | RS 11-01981-MJ |
| | (Consolidated Adversary Proceedings) |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| MIGUEL LEON; GREGORY LEE, | |
| Appellees. | |

Submitted Without Oral Argument
on November 15, 2012[**]

Filed – December 14, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Meredith Jury, Bankruptcy Judge, Presiding[***]

Appearances:     Appellant Donovant Grant pro se on brief; Gary
Sodikoff on brief for appellees Miguel Leon and
Gregory Lee.

_____

   [*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

   [**]By order entered October 4, 2012, this appeal was deemed
suitable for submission without oral argument.

   [***]Case Number RS 10-15079-MJ and Adversary Number
RS 11-01981-MJ formerly were assigned to Judge Catherine Bauer.
However, by order of both Judge Bauer and Judge Jury, Case Number
RS 10-15079-MJ and Adversary Number RS 11-01981-MJ were
reassigned to Judge Jury.

Before: MARKELL, BEESLEY[****] and PAPPAS, Bankruptcy Judges.

## INTRODUCTION

Donovant Grant ("Grant") commenced nondischargeability adversary proceedings against debtors Miguel Leon and Gregory Lee (collectively, "Debtors") under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).[1] The bankruptcy court granted summary judgment in favor of the Debtors, holding that Grant had not timely filed his dischargeability complaints. Grant appeals, and we AFFIRM.

## FACTS

Most of the key facts are not in dispute. We have drawn many of them from the adversary proceeding dockets and from the underlying bankruptcy case dockets.[2]

In 2005, Grant bought a 2002 Ford Explorer ("Explorer") for roughly $8,000. Grant claims that he bought the Explorer from both of the Debtors. Grant also claims that, in order to induce him to purchase the Explorer, the Debtors intentionally made misrepresentations to him regarding the condition of and

---

[****]Hon. Bruce T. Beesley, United States Bankruptcy Judge for the District of Nevada, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]We can take judicial notice of these dockets and of the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

maintenance performed on the Explorer. According to Grant, he suffered approximately $4,000 in damages as a result of the Debtors' alleged fraud.

Grant first sued the Debtors in state court (Ventura County Superior Court Case No. CIV 244559). But before the disposition of Grant's state court lawsuit, both debtors filed chapter 7 bankruptcy cases on February 24, 2010. Neither of the Debtors initially listed Grant on their original master mailing lists filed on February 24, 2010, contemporaneously with their bankruptcy petitions. Consequently, unlike those creditors initially listed by the Debtors, the bankruptcy court did not mail to Grant formal written notice of the bankruptcy filings. That notice, sent to other creditors as of February 26, 2010, set forth the date of the § 341(a) first meeting of creditors and the deadline or bar date under Rule 4007(c) for filing nondischargeability complaints. In Leon's case, the bar date was set for June 7, 2010, and in Lee's case it was set for June 4, 2010.

Both Debtors filed papers in their respective bankruptcy cases in March 2010 listing Grant and his correct address. These papers included: (1) their amended master mailing lists, and (2) their schedule of nonpriority unsecured creditors (Schedule F). There are proofs of service attached to both amended master mailing lists, both dated March 3, 2010. In them, the debtors declared under penalty of perjury that they had mailed a notice of their amended master mailing lists to the parties listed on the attached mailing list ("March 2010 Notice"). Grant is listed on both mailing lists, again at his

3

correct address.

In addition, Grant admitted to having actual knowledge of both bankruptcy filings by no later than early May 2010 ("May 2010 Notice"). He received the May 2010 Notice from Debtors' state court counsel, who filed and served in the state court, on April 29, 2010, formal notice of the bankruptcy filings.

Grant did not take any action in either of the Debtors' bankruptcy cases until January 2011, when he filed motions to reopen both bankruptcy cases so that he could commence dischargeability actions against both Debtors. Grant obtained leave to reopen both cases, and in October 2011 he commenced an adversary proceeding in each bankruptcy case seeking an exception from discharge of debt under §§ 523(a)(2)(A) and (a)(6).[3] Ultimately, the bankruptcy court consolidated for hearing and disposition both bankruptcy cases and both adversary proceedings.

Shortly before consolidation, at status conferences held in December 2011 in both adversary proceedings, the court discussed with the parties its view that the adversary proceedings appeared ripe for disposition on summary judgment. Particularly in the adversary proceeding against Leon, the court explained why it thought Leon was entitled to summary judgment. According to the court: (1) the complaint appeared untimely, and (2) Grant

---

[3]In addition to his claims for relief under §§ 523(a)(2)(A) and (a)(6), Grant stated in each complaint a third claim for relief under § 105(a). Because Grant's appeal brief does not address this third claim for relief, he has waived any argument relating thereto. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002); Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (table) (9th Cir. 1999).

4

appeared to have sufficient knowledge of the bankruptcy filing such that he should have filed his dischargeability complaints long before he actually did. The Debtors' counsel indicated at both status conferences that he would be filing summary judgment motions along the lines indicated by the court. Thus, Grant knew in December 2011 that he likely was going to face summary judgment motions in both adversary proceedings asserting: (1) that he had actual knowledge of the Debtors' bankruptcy filings, and (2) that he nonetheless failed to timely file his dischargeability complaints.

The Debtors moved for summary judgment, asserting that Grant did not timely file his nondischargeability complaints, as required by Rule 4007(c). The hearing on the summary judgment motion[4] was set for March 1, 2012. Grant did not timely respond to the summary judgment motion. Instead, he filed on February 17, 2012, less than two weeks before the hearing on the summary judgment motion, a motion to continue. The main reason Grant gave for a continuance was that he needed more time to conduct discovery. In relevant part, Grant asserted that he was in the process of conducting discovery in order to address the issue of whether Debtors actually served their March 2010

_____

[4]Actually, the adversary proceedings had not yet been consolidated, so the Debtors filed two separate summary judgment motions. But we still refer to them herein as a single summary judgment motion, in light of the subsequent consolidation and for ease of reference. There is no material distinction between the two motions.

5

Notice.[5]

The bankruptcy court denied Grant's motion to continue. In part, the bankruptcy court ruled that Grant's pending and proposed discovery was irrelevant to the sole issue presented by the summary judgment motion – the timeliness issue.

The day before the hearing on the summary judgment motion, Grant filed a belated opposition. Grant argued that the bankruptcy court already had effectively granted him an extension of the deadline under Rule 4007(c) for filing his nondischargeability complaints, when it entered orders reopening the Debtors' bankruptcy cases in 2011. Grant alternately argued that he should be granted Civil Rule 60(b)(1) relief from the untimely filing of his complaints. According to Grant his untimely filings were the result of excusable neglect caused by the distraction of his ongoing litigation of unrelated disputes with third parties. Grant also contended that the Debtors' allegedly fraudulent and evasive conduct during the sale of the Explorer, during the state court litigation and during their bankruptcy cases all militated in favor of extending the Rule 4007(c) deadline.[6]

---

[5]As Grant put it, "plaintiff should be allowed to further discover information pertaining to . . . when and whether the defendant[s] gave notice of [their] late filed schedules, statement of affairs as declared to in their Chapter 7 petitions to local creditors." Ex Parte Motion for Continuance (Feb. 17, 2012) at p. 4 of 7. In this regard, Grant further stated: "Plaintiff served subpoenas on two of the several witnesses he as [sic] intended to serve, in efforts to prove facts in support of his opposition." Id. at p. 2 of 7; see also p. 7 of 7.

[6]In part, Grant contended that the Debtors' failure to
(continued...)

6

The next day, on March 1, 2012, the bankruptcy court held a hearing on the summary judgment motion. The court decided to consider Grant's belated opposition, but it rejected his arguments. The court held that it had no discretion to extend the Rule 4007(c) deadline, based on excusable neglect, the Debtors' alleged conduct, or Grant's motions to reopen. According to the court, because Grant had admitted to receiving actual notice of the Debtors' bankruptcy filings by early May 2010, Grant should have filed his dischargeability complaints certainly by no later than September 2010. Because Grant did not file his dischargeability complaints until October 2011, the bankruptcy court concluded that the Debtors were entitled to summary judgment and that Grant's adversary proceedings should be dismissed.

The bankruptcy court entered a judgment on March 1, 2012, dismissing Grant's consolidated adversary proceedings and declaring Grants' claims against the Debtors to be discharged. Grant timely filed a notice of appeal from the judgment on March 14, 2012.

---

[6](...continued)
schedule and list Grant and his claim at the time they filed their bankruptcy petitions was intentional and fraudulent. But Grant offered no evidence to support this proposition. More importantly, the Debtors' tardiness in scheduling and listing their debt to Grant had no impact on the dischargeability of the debt. These both were chapter 7 no-asset cases. In such cases, failure to schedule (or tardily scheduling) a debt does not affect its dischargeability. Beezley v. Cal. Land Title Co. (In re Beezley), 994 F.2d 1433, 1434 (9th Cir. 1993). Accord, White v. Nielsen (In re Nielsen), 383 F.3d 922, 925-27 (9th Cir. 2004).

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err when it held that Grant's nondischargeability complaints would be dismissed as untimely under Rule 4007(c)?

**STANDARDS OF REVIEW**

We review de novo the application and construction of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Duffy v. Dwyer (In re Dwyer), 303 B.R. 437, 439 (9th Cir. BAP 2003) aff'd, 426 F.3d 1041 (9th Cir 2005).

**DISCUSSION**

The exceptions to discharge under §§ 523(a)(2), (4) and (6) are not self-executing. See § 523(c)(1). A creditor holding a debt subject to one or more of these paragraphs must "request" that the debt be excepted from discharge. Id. That request should be in the form of an adversary complaint, Rules 4007(e) and 7001(6), and must be filed no later than sixty days after the first date set for the § 341(a) meeting of creditors. Rule 4007(c).[7] Under the explicit language of Rule 4007(c), the deadline for commencing an action on a § 523(c) claim only may be extended if the creditor files an extension motion before the

---

[7]The deadline under Rule 4007(c) is not jurisdictional, and must be asserted as a defense, or the defense of untimeliness may be forfeited. See Kontrick v. Ryan, 540 U.S. 443, 458-60 (2004). Both Debtors here asserted untimeliness as a defense in their answers.

8

deadline has run. Excusable neglect and relief under Civil Rule 60(b)(1) cannot be used to extend the deadline, unless those theories are asserted in connection with a timely extension motion. Kelly v. Gordon (In re Gordon), 988 F.2d 1000, 1001 (9th Cir. 1993); Jones v. Hill (In re Hill), 811 F.2d 484, 486 (9th Cir. 1987); Herndon v. De La Cruz (In re De La Cruz), 176 B.R. 19, 24 (9th Cir. BAP 1994); Osborn v. Ricketts (In re Ricketts), 80 B.R. 495, 496 (9th Cir. BAP 1987).

The Ninth Circuit has strictly enforced the Rule 4007(c) deadline against untimely § 523(c) claims. See, e.g., Moody v. Bucknum (In re Bucknum), 951 F.2d 204, 206-07 (9th Cir. 1991); Lompa v. Price (In re Price), 871 F.2d 97, 98-99 (9th Cir 1989). Nonetheless, the Bankruptcy Code provides an alternate claim for relief for § 523(c) creditors who are neither "listed nor scheduled" in time to permit them to file their dischargeability complaint before the Rule 4007(c) deadline expires. See § 523(a)(3)(B). That section provides in relevant part:

> (a) A discharge under section 727, . . . does not discharge an individual debtor from any debt-
> . . . .
> (3) neither listed nor scheduled under section 521(1) of this title with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-
> . . . .
> (B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

(Emphasis added).[8]

This Panel agrees with the parties and the bankruptcy court that the key to this appeal is the independent clause at the end of § 523(a)(3)(B): "unless such creditor had notice or actual knowledge of the case in time for such timely filing and request." We also agree with them that Manufacturers Hanover v. Dewalt (In re Dewalt), 961 F.2d 848, 851 (9th Cir. 1992), is controlling. We first will examine Dewalt and its application in this case; then we will consider Grant's arguments on appeal.

In Dewalt, the creditor Manufacturers Hanover ("Hanover") filed an untimely adversary complaint under § 523(a)(2)(B), roughly five months after the Rule 4007(c) deadline had passed. The debtor Dewalt filed a motion to dismiss the complaint based on the timeliness issue. It was undisputed that Hanover did not receive any formal written notice of either the bankruptcy filing or of the Rule 4007(c) bar date. It also was undisputed that Hanover gained actual knowledge of Dewalt's bankruptcy filing seven days before the Rule 4007(c) deadline, when "the debtor's counsel telephoned the office of the creditor's counsel and left a cryptic message with the secretary that the debtor had previously filed for bankruptcy." Id. at 849.

The bankruptcy court granted the motion to dismiss, and a divided BAP panel affirmed the bankruptcy court. Relying on

---

[8]The Rule 4007(c) bar date does not apply to § 523(a)(3)(B) claims for relief. See Wilborn v. Gallagher (In re Wilborn), 205 B.R. 202, 208 (9th Cir. BAP 1996); Irons v. Santiago (In re Santiago), 175 B.R. 48, 50 (9th Cir. BAP 1994). Instead, Rule 4007(b) applies, and that rule states that the complaint can be filed "at any time." See id.

10

*In re Price*, 871 F.2d at 97, the BAP held that seven days was enough time to permit Hanover to at least file an extension motion seeking more time to file its complaint. Thus, according to the BAP, Hanover could not assert a claim for relief under § 523(a)(3)(B) because § 523(a)(3)(B)'s actual knowledge clause precluded it from doing so. *Id.* at 850.

The Ninth Circuit reversed the BAP, holding that, in most cases, the creditor must have actual knowledge of the bankruptcy case at least thirty days before the Rule 4007(c) bar date in order to satisfy § 523(a)(3)(B)'s actual knowledge clause. As the Ninth Circuit put it, " . . . in the great majority of cases, 30 days advance knowledge of the case is both necessary and sufficient to satisfy section 523(a)(3)(B)." *In re Dewalt*, 961 F.2d at 851 (emphasis added).

The *Dewalt* court further opined that *Price* had not set forth any standards to enable a bankruptcy court to determine how long before the Rule 4007(c) bar date an unscheduled (or tardily scheduled) chapter 7 creditor must learn of the bankruptcy to fall within § 523(a)(3)(B). *Id.* at 850. As a result, the *Dewalt* court endeavored to set forth such standards. *Id.* at 850-51. *Dewalt* stated that thirty days was an appropriate benchmark for most cases as to "the minimum time within which it is reasonable to expect a creditor to act at penalty of default." *Id.* at 851.

*Dewalt* cautioned that, in the presence of certain "extraordinary circumstances," thirty days knowledge of the bankruptcy filing in advance of the bar date might not be enough time to satisfy § 523(a)(3)(B)'s actual knowledge clause. *Id.* According to *Dewalt*, one set of extraordinary circumstances that

11

might necessitate more than thirty days advance knowledge included: (1) an unsophisticated creditor, (2) unrepresented by counsel, (3) without apparent familiarity with the bankruptcy system, who (4) receives only the most sketchy notice that a bankruptcy has been filed. Id. On the other hand, Dewalt concluded that, even if extraordinary circumstances required more than thirty days advance knowledge of the bankruptcy, in no event would the creditor be entitled to actual knowledge of the bankruptcy filing more than eighty days in advance of the Rule 4007(c) bar date. Id. at 851 n.4.

In sum, Dewalt requires bankruptcy courts to count backward from the Rule 4007(c) bar date to determine how much in advance of the bar date the creditor had actual knowledge of the bankruptcy filing. In the vast majority of cases, a minimum of thirty days will be sufficient to satisfy § 523(a)(3)(B)'s actual knowledge clause.

Here, applying the standard set forth in Dewalt, Grant had between thirty-two and thirty-five days actual knowledge of the bankruptcy filings in advance of the Rule 4007(c) bar dates. We have made this calculation by counting back from the bar dates of June 4, 2010, and June 7, 2010, to May 3, 2010, when Grant obtained actual knowledge of the bankruptcy filings based on his admitted receipt of the May 2010 Notice. This meets Dewalt's standard for the thirty-day minimum amount of advance knowledge required in the vast majority of cases to satisfy § 523(a)(3)(B)'s actual knowledge clause. See Dewalt, 961 F.2d

12

at 851.[9]

We note that the bankruptcy court did not appear to consider whether any extraordinary circumstances existed which might have required longer advance notice to satisfy § 523(a)(3)(B)'s actual knowledge clause. But Grant did not challenge in his opening appeal brief the bankruptcy court's failure to consider extraordinary circumstances. Nor did he argue in his opening brief that such extraordinary circumstances existed.

Grant obviously was aware of Dewalt and its standards because he discussed Dewalt extensively in his opening appeal brief. Yet he made no attempt to address the portion of Dewalt dealing with extraordinary circumstances. Consequently, he has waived the issue; arguments not specifically and distinctly made

---

[9]If we were to count back to the March 2010 Notice, Grant would have had between 81 and 84 days knowledge of the bankruptcy filings in advance of the bar dates. Based on Dewalt, this would have exceeded the amount of advance knowledge any creditor under any circumstances needs to have in order to satisfy § 523(a)(3)(B)'s actual knowledge clause. Furthermore, the March 2010 Notice likely is subject to application of the "mailbox rule," as the only items of evidence we could find in the record concerning receipt of the March 2010 Notice were: (1) the proofs of service each Debtor executed indicating that they mailed the March 2010 Notice to Grant; and (2) a declaration of Grant in which he indicated that he did not receive the March 2010 Notice. Under the "mailbox rule," a litigant's declaration of non-receipt is insufficient by itself to overcome the presumption of receipt arising from valid proof of service. In re Bucknum, 951 F.2d at 206-07 & n.1; CUNA Mut. Ins. Grp. v. Williams (In re Williams), 185 B.R. 598, 599 (9th Cir. BAP 1995). Simply put, if the bankruptcy court had chosen to focus on the March 2010 Notice, Grant would have failed to overcome the mailbox rule presumption by presenting "'clear and convincing evidence that the mailing was not, in fact, accomplished.'" Berry v. U.S. Trustee (In re Sustaita), 438 B.R. 198, 209 (9th Cir. BAP 2010), aff'd, 460 Fed.Appx. 627 (9th Cir. 2011) (quoting In re Bucknum, 951 F.2d at 207).

in the appellant's opening brief are deemed waived. <u>Brownfield v. City of Yakima</u>, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (citing <u>Greenwood v. F.A.A.</u>, 28 F.3d 971, 977 (9th Cir. 1994)); <u>Cashco Fin. Servs., Inc. v. McGee (In re McGee)</u>, 359 B.R. 764, 774 (9th Cir. BAP 2006) (citing <u>Doty v. County of Lassen</u>, 37 F.3d 540, 548 (9th Cir. 1994)); <u>see also</u> <u>Wilcox v. C.I.R.</u>, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988) (holding that even pro se litigants must brief arguments on appeal, or they will forfeit them).

In short, because Grant had sufficient actual knowledge of the bankruptcy filings within the meaning of § 523(a)(3)(B)'s actual knowledge clause, Grant was not entitled to pursue a claim for relief under § 523(a)(3)(B). Instead, he was limited to the claims subject to § 523(c) for relief, and these types of claims are subject to the strict Rule 4007(c) bar date. Thus, the bankruptcy court correctly dismissed as untimely Grant's § 523(c) claims for relief.

None of Grant's arguments on appeal persuade us otherwise. Grant argues that the orders granting his motions to reopen the Debtors' bankruptcy cases ("Reopening Orders") explicitly permitted him to file his untimely § 523(c) complaints. But Grant has not explained how or why the Reopening Orders, if they did purport to set new bar dates, could trump the explicit prohibition against granting extensions of Rule 4007(c) bar dates after the bar dates have expired. In any event, the bankruptcy court declined to interpret its own Reopening Orders in a manner that would bring them into conflict with Rule 4007(c). We will defer to the bankruptcy court's interpretation of its own orders.

14

See Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco, 934 F.2d 1092, 1094 (9th Cir. 1991); see also, Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak), 406 F.3d 214, 224 (3rd Cir. 2005) (noting that the bankruptcy court "was well suited to provide the best interpretation of its own order."); Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1203 (7th Cir. 1989) ("Few persons are in a better position to understand the meaning of a [court order] than the [bankruptcy] judge who oversaw and approved it.")

Moreover, Grant's argument betrays a fundamental misunderstanding of the limited significance of the reopening of the Debtors' bankruptcy cases. Generally speaking, an order granting a motion to reopen typically does not alter the rights and liabilities of the parties involved. See Menk v. Lapaglia (In re Menk), 241 B.R. 896, 916-17 (9th Cir. BAP 1999). More to the point, an order granting a motion to reopen entered in a no asset chapter 7 case does not change the rights and liabilities of a creditor holding an unfiled § 523(c) claim for relief. Regardless of the reopening, either: (1) the creditor had sufficient notice/knowledge and the claim was discharged before the bankruptcy case was closed, or (2) the creditor had insufficient notice/knowledge and the creditor still has an alternate claim for relief under § 523(a)(3)(B). See In re Beezley, 994 F.2d at 1434.

Grant's other arguments on appeal are similarly unpersuasive. For instance, Grant argues that the Debtors' allegedly fraudulent and evasive conduct, both before and after he started litigating with them, justified an extension of the

15

Rule 4007(c) bar date. There are two obvious problems with this argument: (1) Grant presented no evidence to the bankruptcy court to support his allegations of fraudulent and evasive conduct, and (2) even if he had presented such evidence, Rule 4007(c) simply did not permit the bankruptcy court to give Grant an extension of the bar date under these types of circumstances when Grant did not request the extension before the bar date expired. See In re Gordon, 988 F.2d at 1001; In re Hill, 811 F.2d at 486.

Finally, Grant argues that he was denied due process by the bankruptcy court's application of § 523(a)(3)(B)'s actual knowledge clause. But the Ninth Circuit, and many other courts, have repeatedly upheld this clause against such due process challenges. As one leading treatise puts it:

> The exception in section 523(a)(3) for creditors who do not receive notice of the case but otherwise acquire actual knowledge has been consistently upheld against challenges based on due process.

4 Collier on Bankruptcy ¶ 523.09[4][a] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2012) (citing, among other cases, In re Price, 871 F.2d at 97).

## CONCLUSION

For all of the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment dismissing Grant's nondischargeability complaints as untimely.[10]

---

[10]In their responsive brief, the Debtors requested that sanctions be imposed against Grant for filing a frivolous appeal. That request is hereby ORDERED DENIED. Pursuant to Rule 8020, sanctions requests must be made by separately-filed motion.