See also 2017 WL 825330.

### IN RE: Charles Lee ROSE and Nicole Marie Rose, Debtors.

### Case No. 09–33798–MKN

United States Bankruptcy Court, D. Nevada.

Date: January 19, 2017

Entered January 23, 2017

Brett A. Axelrod, Teodora H. Popova,
Fox Rothschild LLP, David A. Stephens,

Stephens Gourley & Bywater, Matthew C. Zirzow, Larson & Zirzow, David J. Winterton, Las Vegas, NV, for Debtors.

## ORDER ON MOTION TO SET ASIDE VALUATION ORDER [1]

Honorable Mike K. Nakagawa, United States Bankruptcy Judge

On January 19, 2017, the court heard the Motion to Set Aside Valuation Order ("Motion") brought by Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage (jointly "Wells Fargo"). (ECF No. 787). Rushmore Loan Management Services, LLC ("Rushmore") and MTGLQ Investors, LP ("MTGLQ") joined in the Motion. (ECF No. 831). Opposition was filed by the above-captioned Debtors ("Opposition"). (ECF No. 833). Wells Fargo filed a reply. (ECF No. 877). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.[2]

The court having considered the Motion, together with the arguments and representations of counsel, concludes that an evidentiary hearing is required.

Wells Fargo's motion seeks to vacate the Order on Motion to Value Collateral, "Strip Off" and "Cram Down" to Modify Rights of Creditors for the Property 405 Linda Ave., Piedmont, California 94611, that previously was entered on October 2, 2012 ("Valuation Order"). (ECF No. 220). The Valuation Order had been granted on an uncontested basis at a hearing held on September 19, 2012. Debtors' underlying Motion to Value Collateral, "Strip Off" and "Cramdown" to Modify Rights of Unsecured Creditors for the Property 405 Linda Ave., Piedmont, California 04611 Pursuant to 11 U.S.C. § 506(a) and § 1123(b)(5) ("Valuation Motion")[3] was filed on August 20, 2012. (ECF No. 181).

■ The Valuation Motion was accompanied by a Notice of Hearing ("NOH"). (ECF No. 182). The NOH states, <u>inter</u>

---

1. In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure. All references to "FRCP" are to the Federal Rules of Civil Procedure.

2. The instant Motion was filed by Wells Fargo, and joined by Rushmore and MTGLQ, in response to efforts by the Debtor to obtain contempt sanctions against those parties. Debtors reopened the instant proceeding, alleging that the respondents have violated the Chapter 11 discharge that was entered on April 13, 2015. (ECF No. 484). That discharge was entered based on a determination that the Debtors had complied with their Chapter 11 plan of reorganization that had been confirmed at a hearing held on February 19, 2014. (ECF No. 357). Confirmation of that plan had been preceded by the entry of a specific order in October 2012 to value cer-

tain real property that served as collateral on separate obligations owed to two different creditors. Debtors' requests for sanctions against Wells Fargo (ECF No. 550), as well as Rushmore and MTGLQ (ECF No. 489), are scheduled for a multi-day evidentiary hearing that will commence on February 23, 2017. (ECF No. 744). In addition to filing the instant Motion, Wells Fargo, joined by Rushmore and MTGLQ, filed a separate motion seeking to convert this reopened Chapter 11 proceeding to a Chapter 7 liquidation. (ECF No. 667). Both of these motions were scheduled to be heard on January 19, 2017, along with five additional motions seeking summary judgment or partial summary judgment on the issue of whether sanctions for violation of the Chapter 11 discharge injunction is appropriate. Numerous evidentiary and procedural objections also were noticed to be heard on the same date.

3. In this Order, the real property that is the subject of the Valuation Motion will be referred to as the "Linda Avenue Property."

alia, that "The Motion seeks the following relief: to value collateral, 'strip off' and modify rights of BANK OF AMERICA (ACCT. ENDING IN 2999) pursuant to 11 U.S.C. § 506(a) and § 1123(b)(5)." According to the Certificate of Mailing attached to the NOH, only the NOH was served by United States mail on a variety of parties at the addresses shown on an attached matrix. With respect to Wells Fargo, matrix reflects the following names and addresses:

WELLS FARGO
P.O. BOX 14411
DES MOINES, IA 50306–3411
WELLS FARGO
PO BOX 10335
DES MOINES, IA 50306–0335
WELLS FARGO
PO BOX 31557
BILLINGS, MT 59107–1557
WELLS FARGO FINANCIAL CARDS
P.O. BOX 98791
LAS VEGAS, NV 89193–8791
Wells Fargo Bank NA
PO Box 10438
Des Moines, IA 50306–0438

Under FRBP 7004(b)(3), service by first class mail on a corporation or other non-individual entity must be addressed to the attention of an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Under FRBP 7004(h), service by mail on an insured depository institution, e.g., Wells Fargo Bank, N.A., must be accomplished by certified mail addressed to an officer of the institution.[4]

■■■■ When a legal document is accompanied by a certificate of service, proof of service, certificate of mailing, or similar statement attesting under penalty of perjury, that the document has been deposited into the United States mail, that attestation creates an evidentiary presumption that the document was delivered to the addressee. Known as the "mailbox rule," a proof of timely and proper mailing creates a rebuttable presumption that the mailed document was received by the addressee. See Mahon v. Credit Bureau of Placer Cnty. Inc., 171 F.3d 1197, 1202 (9th Cir. 1999); Moody v. Bucknum (In re Bucknum), 951 F.2d 204, 206-07 (9th Cir. 1991).[5] See also Nev.Rev.Stat. 47.250(13)(rebuttable presumption of receipt by mail).[6]

---

4. There are three exceptions to the certified mail requirement, none of which appear to be applicable in this case. Although it appears that amended Proof of Claim 14-2 regarding a property located at 1660 South Valedez Street, Las Vegas, Nevada, was filed on behalf of Wells Fargo Bank, N.A., on January 28, 2013, by the law firm of Tiffany & Bosco, P.A., that appearance by counsel was well after the Valuation Motion was filed. Moreover, the matrix attached to the Certificate of Mailing does not reflect that Tiffany & Bosco, nor any other attorney representing Wells Fargo, was sent a copy of the NOH.

5. "[A] sworn statement is credible evidence of mailing for purposes of the mailbox rule." Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 964 (9th Cir. 2001), citing Lewis v. United States, 144 F.3d 1220, 1223 (9th Cir. 1998). The mailbox rule as a rule of evidence should not be confused with the mailbox rule as a rule of contract law. As a rule of contract law, the mailbox rule may serve to establish the timing and acceptance of a contract offer. See, e.g., Palo Alto Town & Country Vill., Inc. v. BBTC Co., 11 Cal.3d 494, 500, 113 Cal.Rptr. 705, 521 P.2d 1097 (Cal. 1974) (notice of acceptance of contract option is effective when deposited in the mail).

6. The faith that the legal system places on the efficiency and trustworthiness of the U.S. Postal Service rarely is challenged and usual chain of custody rules are largely ignored. See Rosenthal v. Walker, 111 U.S. 185, 193-94, 4 S.Ct. 382, 28 L.Ed. 395 (1884) ("The

The presumption is not rebutted simply by submitting an affidavit denying receipt of the document; rather, the presumption must be overcome by clear and convincing evidence. See In re Bucknum, 951 F.2d at 206-07. Evidence to buttress such denial must be included, such as, for example, testimony from an employee that the document was not sent, or proof that other listed parties did not receive the document. Id. at 207 n.1, citing Osborn v. Ricketts (In re Ricketts), 80 B.R. 495, 498-99 (9th Cir. BAP 1987). "[C]lear and convincing evidence 'indicat[es] that the thing to be proved is highly probable or reasonably certain. This is a greater burden than preponderance of the evidence,...but less than evidence beyond a reasonable doubt.'" United States v. Jordan, 256 F.3d 922, 930 (9th Cir. 2001), quoting Black's Law Dictionary 577 (7th ed. 1999).

The presumption raised by the mailbox rule, however, is only that the mailed document was received at the address indicated, but not by the person required to receive the document. FRBP 7004(a)(3) required the Debtors to serve the NOH on an officer, managing or general agent of Wells Fargo, or an appointed agent authorized by law to accept process. The mailbox rule does not raise any evidentiary presumption as to this requirement and Wells Fargo is not required to rebut such a presumption. See In re Villar, 317 B.R. 88, 94 (9th Cir. BAP 2004).

In this instance, the NOH was mailed to five different addresses for Wells Fargo (or a Wells Fargo entity), but none were sent to the attention of the person required by FRBP 7004(a)(3).[7] Debtors assert, however, that in spite of their failure to comply with FRBP 7004(a)(3), an officer, managing or general agent of Wells Fargo, or an appointed agent, had actual notice of the Valuation Motion because either electronic notice was sent to Wells Fargo, or, notice by first class mail was sent to an address attributable to Wells Fargo. See Opposition at 4:9 to 7:6. Debtors' assertion, however, is insufficient to establish that they met the express requirements of FRBP 7004(a)(3). Compare In re Villar, 317 B.R. at 94 ("In the matter on appeal Debtor presented no evidence that Beneficial's appropriate officer or agent received actual notice of the Motion, so we must presume that Beneficial did not receive actual notice (at least, not before entry of the order granting the Motion)."). Debtors also attest that they spoke to someone at Wells Fargo well after the Valuation Motion was granted,

---

rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed... '[T]he presumption so arising is not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty and the usual course of business...'")(citations omitted; emphasis added). As if to echo the Supreme Court's confidence, the words "Neither snow nor rain nor heat nor gloom of night stays these couriers from the swift completion of their appointed rounds" appears on the U.S. Post Office building located on 33rd Street in New York City. In the 1947 holiday film "Miracle on 34th Street," the reliability of the U.S. Postal Service as an agency of the federal government was accepted as proof that the character Kris Kringle was Santa Claus through the delivery to a courtroom of thousands of Christmas letters from children, all addressed to Santa Claus. Many years later, the mailbox rule continues to apply. See generally Woodies Holdings, LLC v. United States, 120 Fed.Cl. 113, 117-18 (2015).

7. There seems to be no real dispute that Wells Fargo also was not served by certified mail as required by FRBP 7004(h).

but before their Chapter 11 Plan was confirmed. See Declaration of Nicole Marie Rose in Support of Opposition to Motion to Set Aside Valuation Order at 2:12 to 4:4.[8] (ECF No. 470). While that testimony might be material if Wells Fargo was seeking to set aside the Plan Confirmation Order on notice grounds, it is not material to whether a required representative of Wells Fargo had actual notice of the hearing on the Valuation Motion. The evidentiary record on this factual issue is incomplete.

Questions also exist with respect to the scope of any notice that purportedly was given to Wells Fargo. The Certificate of Mailing submitted by the Debtors attests that only the NOH was served on parties in interest. That certificate does not evidence that the Valuation Motion itself was ever served by mail on any parties in interest. The language of the NOH states only that the Debtors' motion seeks to modify the rights of Bank of America and mentions nothing about Wells Fargo. This actually is consistent with the prayer of the Valuation Motion which does not seek any relief with respect to Wells Fargo. See Valuation Motion at 3:20-28. Thus, even if an officer, managing or general agent actually received a copy of the NOH or the Valuation Motion itself, there was no notice provided that the rights of Wells Fargo were being altered.

Even the proposed order attached to the Valuation Motion did not provide notice of a consequence to Wells Fargo. The proposed order stated that "the value of the Subject Property is $320,000.00." The balance of the proposed order then purports to grant relief with respect to Bank of America's junior secured claim against the Linda Avenue Property. After the hearing on the Valuation Motion, Debtors' counsel uploaded the proposed order and it was entered by the court on October 2, 2012. But then what?

Debtors' Second Amended Plan of Reorganization ("Plan") was filed on July 3, 2013. In its treatment of Bank of America's secured claim against the Linda Avenue Property, the Plan specifically states that "The value of the property is worth $320,000.00." Plan at 15 of 28, line 4. This is consistent with the Valuation Order. As to Wells Fargo's Class 3 secured claim against the Linda Avenue Property, Debtors' Plan states that "Wells Fargo will receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property or for the realization by Wells Fargo of the indubitable equivalent of such claim." Plan at 16 of 28, lines 5-18. This too is consistent with the Valuation Order because the Valuation Motion did not seek relief against Wells Fargo. As to any balance of Wells Fargo's claim, the Plan also specifies that "The remainder of its claim will be paid under Class 8 of the Plan." Id. at line 14. Class 8 includes allowed unsecured deficiency claims. Id. at 18 of 28, line 14.

According to the Order Confirming Debtors' Chapter 11 Plan of Reorganization ("Plan Confirmation Order") (ECF No. 357), the effective date of the Plan was the first business day thirty days after the confirmation order became final and unappealable. The Plan Confirmation Order

---

**8.** Although this declaration is signed under penalty of perjury, none of the so-called testimony is in the first person. The declarant previously testified as a live witness before this court, see Order on Motion to Value Collateral, "Cramdown" and Modify Rights of Bank of New York Mellon (Acct Ending in 4620) Pursuant to 11 U.S.C. § 506(a) (ECF No. 159), and did not refer to herself in the third person.

was entered on April 1, 2014, and the fourteen-day appeal period under FRBP 8002(a)(1) expired on April 15, 2014. No appeals were taken and the Plan therefore became effective on or about May 15, 2014. There is nothing in the record, however, establishing that the Debtors ever took steps to determine a value of the Linda Avenue Property as of May 15, 2014.[9]

This ambiguity in the record raises at least three additional questions. <u>First</u>, what was the allowed amount of Wells Fargo's secured claim against the Linda Avenue Property as of May 15, 2014? The Valuation Motion was accompanied only by a copy of a California broker's price opinion dated May 17, 2012, <u>see</u> Exhibit "2" to Valuation Motion, for which an evidentiary objection likely would have been sustained. <u>See</u> Cal. Bus. & Prof. Code § 11302(b) (West Jan. 1, 2015) ("'Appraisal' means a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion in a federally related transaction as to the market value of an adequately described property as of a specific date... <u>The term 'appraisal' does not include an opinion given by a real estate licensee</u>...and the opinion shall not be referred to as an appraisal...").[10] The value of the Linda Avenue Property two years later might have been much higher. <u>Second</u>, what was the allowed amount of Wells Fargo's unsecured claim arising from Wells Fargo's first priority lien against the Linda Avenue Property? Under Class 8 of the Plan, any allowed deficiency claim owed to Wells Fargo should have been paid pro rata from quarterly installment payments of disposable income made by the Debtors.[11] <u>Third</u>, did Wells

9. The Plan Confirmation Order does not include a provision specifying the value of the Linda Avenue Property with respect to Wells Fargo's Class 3 claim even though it specifically includes a stipulated value of the real property securing the claim of the Class 2 creditor, Bank of New York Mellon ("BONY"). That stipulated value reflects a settlement that the Debtors reached to resolve an objection to plan confirmation. A separate order valuing BONY's collateral at $670,000 previously was entered in February 2012, <u>see</u> note 6, <u>supra</u>, and Class 2 of the proposed Plan provided for BONY to have an allowed secured claim in the amount of that value, with the balance of BONY's claim allowed as an unsecured claim paid in Class 8. <u>See</u> Plan at 15 0f 28, lines 16-25. BONY objected to confirmation of the proposed Plan. <u>See</u> Supplemental Objections to Proposed Chapter 11 Plan and Confirmation Thereof (ECF No. 328); Secured Creditor's Supplemental Objection to Confirmation of Debtors' mended Plan # 2 (ECF No. 347). To resolve the objection, Debtors stipulated to a value of $837,000 prior to plan confirmation, thereby eliminating any deficiency claim that would be paid in Class 8. Debtors attested that the increased payment to BONY's Class 2 secured claim would not affect their ability to make plan payments, including "a $727.00 payment per month to the unsecured creditors." <u>See</u> Second Supplemental Declaration of Nicole Marie Rose in Support of Confirmation of Debtors' Plan at ¶¶ 3, 4, 5, 6 and 7. (ECF No. 356). Unlike the situation with BONY, the Plan Confirmation Order does not provide that the Valuation Order applies to the treatment of Wells Fargo's Class 3 claim, nor does it provide for a settlement of the amount of Wells Fargo's secured and unsecured claims.

10. Nevada law is similar with respect to the utility of a broker's price opinion in determining the market value of real property. <u>See</u> Nev.Rev.Stat. 645.2515 (3)(i) ["A broker's price opinion must include, without limitation...the following disclaimer: 'Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.'"].

11. Under Section 1129(a)(15)(B), the requirement for individual Chapter 11 debtors to make payments of projected disposable income arguably applies only if a holder of an allowed unsecured claim objects to plan confirmation. In this instance, it appears that at least BONY was a holder of an allowed unsecured claim under the terms of the proposed

Fargo receive the allowed amounts required by the Debtors' confirmed Plan? If the Debtors never obtained a valuation of the Linda Avenue Property as of the effective date of their own confirmed Plan, then the allowed amounts of Wells Fargo's secured and unsecured claims under Section 506(a) could not have been known. As a result, it would have been difficult if not impossible for the Debtors to have certified that all payments to the approved unsecured creditors had been made, see Debtors' Certificate of Compliance with Conditions Related to Entry of Chapter 11 Individual Discharge Together with Notice Thereof at ¶ 1 (ECF No. 474), and to specifically attest that all payments required by the plan have been completed. See Declaration of Nicole Marie Rose in Support of Debtors' Motion for Entry of Order of Discharge and Final Decree in Chapter 11 Case at ¶¶ 10, 11 and 13. (ECF No. 470). Yet, they did so.

 Under these circumstances, the court questions whether it is even necessary for Wells Fargo to set aside the Valuation Order because it may have little

impact on the outcome of the relief ultimately sought by the Debtors, i.e., to obtain sanctions against various parties for violation of the discharge injunction as it relates to the disposition of the Linda Avenue Property.[12] To the extent Wells Fargo still seeks to vacate the Valuation Order because the notice given did not comport with due process, a factual issue has been raised as to whether Wells Fargo received actual notice of the relief allegedly sought by the Valuation Motion.

**IT IS THEREFORE ORDERED** that the Motion to Set Aside Valuation Order brought by Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Docket No. 787, will be continued to February 8, 2017, at 9:30 a.m., solely for the purposes of scheduling an evidentiary hearing limited to the issue of actual notice.

Plan and BONY did object to plan confirmation. See note 9, supra. Thus, the disposable income requirement apparently did apply.

**12.** Debtors' additional argument that the doctrine of res judicata should somehow bar Wells Fargo's efforts is inapplicable. If a claim ("res") between the same parties previously has been adjudicated ("judicata"), then the parties are bound by that determination and are precluded from relitigating the claim. The res judicata doctrine has a claim preclusion component as well as an issue preclusion component. The issue preclusion component does not apply to these disputes as there has been little or no "actual litigation" of any issues between the instant parties, e.g., the notice actually received by Wells Fargo, the value of the Linda Avenue Property, etc. The

claim preclusion component does not require actual litigation, but precludes the assertion of claims that could have been asserted by the same parties in a prior proceeding. At the Value Motion, there was no "counterclaim" for Wells Fargo to assert because the NOH limited the Debtors' relief to Bank of America. At the Plan Confirmation stage, the Debtors' proposed treatment of Wells Fargo's claim was based on the value of the Linda Avenue Property as of the effective date of the plan. There was no claim for Wells Fargo to advance because the Debtors had proposed to pay the value of its collateral. At the Chapter 11 Discharge stage, Wells Fargo could have objected entry of the discharge, but did not have to obtain relief from any prior order. The claim preclusion component of the res judicata doctrine also does not apply.